CC-96-478                                                          1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Imgard L. Piñero González<br>      Demandante-Recurrida<br><br>      V.<br><br>Autoridad de Acueductos y<br>Alcantarillados<br>      Demandado-Recurrente | Certiorari<br><br>98TSPR141 |

Número del Caso: CC-96-0478

Abogado de la A.A.A.:                    Lcdo. Richard O. Pereira

Abogado de Imgard L. Piñero González:    Lcdo. Luis Roberto Piñero

Abogados de Benjamín Pomales:            Lcdo. Eliezer Aldarondo
                                         Lcdo. Pablo Landrau Pirazzi

Abogado de la Jta. Directores de AAA:    Lcdo. Luis León Freire

Tribunal de Instancia:                   Superior de Carolina

Juez del Tribunal de Primera Instancia: Hon. C. Heydee Pagani Padró

Tribunal de Circuito de Apelaciones:     Circuito Regional VII

Juez Ponente:                            Hon. Salas Soler

Fecha:                                   23/10/98

Materia:                                 Reclamo de Derechos Laborales

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Imgard L. Piñero González

   Demandante-Recurrida

        vs.                        CC-96-478

Autoridad de Acueductos y
Alcantarillados

   Demandado-Recurrente


Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODON



San Juan, Puerto Rico, a 23 de octubre de 1998


**I**

La demandante recurrida, la Sra. Imgard L. Piñero González ocupó el puesto de Coordinadora Especial, clasificado como uno de confianza, en la Autoridad de Acueductos y Alcantarillados (A.A.A.), aquí peticionaria, desde el 1 de abril de 1991 hasta el 2 de febrero de 1996, día en que fue despedida sumariamente. Tras intentar, sin éxito, que la A.A.A. reconsiderara la terminación de su empleo, el 7 de marzo de 1996 la señora Piñero presentó una querella al amparo del procedimiento sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec.

3118 y ss. La señora Piñero basó su reclamación en diversas disposiciones legales, entre éstas, la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 y ss; la Ley Núm. 382 del 11 de mayo de 1950, según enmendada, 29 L.P.R.A. sec. 136 y ss; la Ley Núm. 115 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 194(a) y la Ley Núm. 402 del 12 de mayo de 1950, según enmendada, 32 L.P.R.A. sec. 3114 y ss.

En la querella, la señora Piñero alegó que conforme a las disposiciones de la Resolución 966, aprobada el 28 de diciembre de 1979 por la Junta de Gobierno de la A.A.A. (Resolución 966), poseía un derecho propietario sobre una plaza permanente de carrera en dicha corporación. Sostuvo, además, que su despido había sido un acto de discrimen político y en violación al debido proceso de ley. Solicitó que se le restituyera en su empleo con el pago retroactivo de los salarios dejados de percibir y los daños y perjuicios.

Tras varios incidentes procesales, el 22 de mayo de 1996 la A.A.A. solicitó que se dictara sentencia sumaria parcial en cuanto a la causa de acción mediante la cual la señora Piñero reclamó la reposición en un puesto de carrera al amparo de la Resolución 966. La A.A.A. alegó que dicha resolución es nula ab initio o, en la alternativa, que ésta fue revocada por fíat legislativo con anterioridad a que la señora Piñero comenzara a trabajar para dicha corporación. Posteriormente, el 27 de mayo de 1996, la A.A.A. presentó una moción en la cual alegó que la señora Piñero no tiene derecho alguno a invocar el procedimiento sumario dispuesto en la Ley Núm. 2, supra, debido a que este procedimiento aplica a los obreros y empleados, según dichos términos están definidos en la Sec. 2 de la Ley Núm. 2, supra, 32 L.P.R.A. sec. 3119, pero no a la señora Piñero, porque ella ocupaba un puesto ejecutivo y de confianza en la A.A.A.

Ambas solicitudes fueron denegadas. El foro de instancia determinó que el caso de autos se podía tramitar al amparo del procedimiento sumario dispuesto en la Ley Núm. 2, supra. En cuanto a la solicitud de

sentencia sumaria, resolvió que la A.A.A no demostró que hubiese inexistencia de controversia de hechos.

Así las cosas, el 19 de agosto de 1996 la A.A.A. presentó un recurso de certiorari ante el Tribunal de Circuito de Apelaciones, (en adelante Tribunal de Circuito)[1]. El 23 octubre de 1996, el Tribunal de Circuito emitió una resolución en la cual confirmó al foro de instancia. Oportunamente, la A.A.A. presentó una moción de reconsideración, la cual fue denegada por el foro apelativo. Inconforme, la A.A.A. presentó ante nos un recurso de certiorari en el cual hizo los siguientes señalamientos de error:

1.  Erró el Tribunal de Circuito de Apelaciones al intimar que la Querellada-Recurrida [señora Piñero] era un "obrero" o "empleado" en el contexto de la Ley 2 del 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.* erró, además, al señalar que la recurrente no puso al tribunal en posición de atender su reclamo en cuanto a limitar el alcance del procedimiento sumario.

2.  Erró el Tribunal de Circuito de Apelaciones al determinar que no puede resolverse mediante sentencia sumaria la controversia de derecho relativa a la Resolución 966 de la Junta de Gobierno de la AAA, porque existen alegadamente controversias materiales de hecho en torno a la misma.

Expedimos el auto y decidimos revisar.

## II

Respecto al primer señalamiento de error, la A.A.A. alegó que el caso de autos no puede tramitarse al amparo de la Ley Núm. 2, supra, ya que la señora Piñero no es un obrero ni un empleado para efectos de la misma. Sostuvo, además, que debido a que la Ley Núm. 2, supra, no elabora en cuanto al alcance de dichos términos, para disponer de la controversia ante nuestra consideración resulta ilustrativo recurrir,

---

[1] La A.A.A. le imputó al foro de instancia haber incurrido en los siguientes errores:

1. Si el tribunal de instancia erró al determinar que este caso puede tramitarse mediante el procedimiento sumario de la Ley 2 del 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.*

2. Si el tribunal de instancia erró al declarar sin lugar la moción de sentencia sumaria parcial de los Querellados-Recurrentes [A.A.A.]

por tratarse de una ley *in pari materia*, al Reglamento Núm. 13 de 1990 de la Junta de Salario Mínimo promulgado al amparo de la Ley de Salario Mínimo, 29 L.P.R.A. sec. 245 y ss.

La Ley Núm. 2, supra, establece un procedimiento sumario para los casos de reclamaciones laborales. La finalidad del mismo es proveer al empleado un mecanismo procesal mediante el cual se aligere el trámite de las reclamaciones laborales presentadas contra su patrono, además de implantar la política pública del Estado de proteger el empleo, desalentar el despido sin justa causa y proveer al obrero despedido de medios económicos para su subsistencia mientras consigue un nuevo empleo. Rivera v. Insular Wire Products Corp., Op. de 24 de mayo de 1996, 140 D.P.R. __ (1996), 96 J.T.S. 76; Mercado Cintrón v. ZETA Communications Inc., Op. de 7 de abril de 1994, 137 D.P.R.__ (1994), 94 J.T.S. 50; Srio. del Trabajo v. J.C. Penney Co., 119 D.P.R 660 (1987). Hemos expresado también, "que la Ley Núm. 2 ofrece protección no solo al trabajador agrícola, sino a todo obrero o empleado doméstico, del comercio o la industria, entre otros". (Enfasis nuestro.) Rivera v. Insular Wire Products, supra, pág. 1170.

La Ley Núm. 2, supra, define los términos obrero y empleado de la siguiente forma:

> La palabra obrero ... comprenderá a todo trabajador manual, de cualquier sexo y aquellas personas naturales que estuvieren empleados en servicios u ocupaciones domésticas, y la palabra "empleado", que se usa en su acepción más amplia, comprenderá, entre otros, a toda clase de artesano, empleado o dependiente de comercio o industria. (Enfasis suplido.)

Para la solución de la controversia ante nuestra consideración es preciso que determinemos el alcance del término empleado según utilizado en la Ley Núm. 2, supra.

En reiteradas ocasiones hemos expresado que constituye un principio de hermenéutica que al interpretar una disposición legal, los tribunales debemos considerar cuál fue el propósito de la Asamblea Legislativa al aprobarla y atribuirle un sentido que asegure el

resultado que se quiso obtener originalmente. Colegio de Opticos de P.R. v. Vision Center, Inc., Op. de 10 de enero de 1997, 142 D.P.R. __ (1997), 97 J.T.S. 1; Vázquez v. ARPE, 128 D.P.R. 513 (1991). Para descubrir la intención del legislador resulta conveniente recurrir al historial legislativo de la ley y considerar cuál fue el propósito social de la misma "... puesto que el fin principal de la interpretación estatutaria es hacer que prevalezca el propósito legislativo y evitar interpretaciones que conduzcan a resultados irrazonables". Aulet v. Departamento de Servicios Sociales, Op. de 28 de junio de 1991, 129 D.P.R. __ (1991), 91 J.T.S. 73.

En el debate del proyecto de la Ley Núm. 2, en la Cámara de Representantes, se expresó lo siguiente:

> Sr. Presidente: Adelante.
>
> Sr. Rivera Morales: La pregunta al Presidente de la Comisión de lo Jurídico, con la venia del Presidente, es si se define en esta ley el concepto "obrero o empleado" y la ley es para regir o reglamentar las relaciones entre obreros, empleados o patronos ¿debe o no debe definirse en alguna forma el concepto de "patrono"?
>
> Sr. Ortiz Ortiz: Digo, la situación es que esta es una ley de procedimiento, de reclamaciones; o sea, de los pleitos que se puedan traer; y está basada en otras leyes que establecen los derechos a salarios. En esas otras leyes es que hay esas definiciones. Por lo tanto, estas acciones presuponen que haya un derecho a salario bajo las leyes sustantivas. O sea, que esto es de procedimiento nada más, y esta ley de procedimiento tendría que ajustarse a las otras leyes de salarios, donde ya hay esas definiciones.

De dicho debate surge con meridiana claridad que la Ley Núm. 2, supra, es una estrictamente de procedimiento y que para delimitar el ámbito de su aplicación hay que recurrir a las leyes especiales que establecen el derecho sustantivo de los empleados a reclamar salarios.

Entre las leyes especiales que establecen causas de acción a favor de obreros y empleados para la reclamación de salarios se encuentran la Ley de Salario Mínimo, 29 L.P.R.A. sec. 246 b; la Ley sobre la Jornada de Trabajo en Puerto Rico, Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. sec. 282 y la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. secs. 185a y ss, sobre la reclamación por despido

injustificado. La Ley de Salario Mínimo, supra, excluye del ámbito de su protección a los ejecutivos, administradores y profesionales. Dispone, además, que la Junta de Salario Mínimo definirá dichos términos mediante reglamento. La Ley Núm. 379, supra, excluye de su definición de empleados a los ejecutivos, administradores y profesionales y también refiere a la Junta de Salario Mínimo para la definición de dichos términos.[2] Según expresáramos anteriormente, la A.A.A. alega que por tratarse de leyes *in pari materia*, al interpretar el término empleado, según dispuesto en la Ley Núm. 2, supra, se debe utilizar la definición establecida en el Reglamento Núm. 13 de 1990 de la Junta de Salario Mínimo. No le asiste la razón. Veamos.

El alcance de la Ley Núm. 2, supra, se ha extendido mediante diferentes disposiciones estatutarias y enmiendas. Como resultado, el procedimiento sumario establecido en la misma es aplicable no tan solo

---

[2] El Reglamento Núm. 13 de la Junta de Salario Mínimo define <u>ejecutivo</u> (en todas las actividades excepto las agrícolas) de la siguiente forma:

Cualquier empleado que reúna los siguientes requisitos:

(a) que tenga por deber primordial la dirección de la empresa en que trabaja o de un usualmente reconocido departamento o subdivisión de la empresa; y

(b) que usual y regularmente dirija el trabajo de dos o más empleados de la empresa o departamento o subdivisión de la misma; y

(c) que tenga la autoridad de emplear y despedir empleados, o cuyas sugestiones o recomendaciones sobre el empleo, despido, mejoramiento, ascenso o cualquier otro cambio en el status de éstos hayan de recibir especial consideración; y

(d) que usual y regularmente ejerza facultades discrecionales; y

(e) que no dedique más del 20%, o en el caso de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40% de las horas trabajadas en una semana de trabajo, a actividades que no estén directa y estrechamente relacionadas con el desempeño del trabajo descrito en el Apartado A- Inciso (a) hasta (d) inclusive, de este Artículo IV; disponiéndose que este Inciso (e) no será aplicable en el caso de un empleado que esté encargado de una empresa independiente o de una sucursal de la empresa físicamente separada del establecimiento principal de la misma, o de un empleado que sea dueño de por lo menos el 20% del capital de la empresa en la que está trabajando; y

(f) que reciba por sus servicios una compensación fija equivalente a un sueldo semanal no menor de doscientos dólares ($200), excluyendo alimentos, vivienda y otros servicios.

(g) También significará cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los Incisos (a) y (b) de este Artículo IV y que reciba por sus servicios una compensación fija equivalente a un salario semanal no menor de doscientos noventa y cinco dólares ($295), excluyendo alimentos, vivienda u otros servicios.

a reclamaciones de salarios sino a reclamaciones de cualesquiera derechos o beneficios laborales y de cualesquiera compensaciones en caso de que un obrero o empleado hubiese sido despedido de su empleo sin justa causa. La Ley Núm. 2, supra, está disponible, además, cuando el legislador lo haya reglamentado mediante leyes especiales. Rivera v. Insular Wire Products Corp., supra, pág. 1173. Entre las acciones que pueden ventilarse al amparo del procedimiento sumario por disposición de una ley especial se encuentran: (i) las reclamaciones por despido injustificado basadas en la Ley Núm. 80, supra; (ii) las acciones que surgen al amparo del Art. 5a de la Ley de Compensaciones por Accidentes de Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 L.P.R.A. sec. 7a, (iii) las reclamaciones instadas al amparo de la Ley Antidiscrimen, Ley Núm. 100, supra[3]; (iv) las acciones que surgen en virtud de la Ley para la protección de madres obreras, Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. secs. 467 y ss; y (v) las reclamaciones presentadas en virtud del Art. 3 de la Ley Núm. 382, 29 L.P.R.A. sec. 138, la cual establece la responsabilidad civil de un patrono que, entre otras cosas, discrimine contra un empleado o ex empleado porque está afiliado a determinado partido político.

Lo anterior es demostrativo de que el ámbito de aplicación de la Ley Núm. 2, supra, se ha extendido para abarcar diversas reclamaciones que emanan de la relación obrero patronal. Por lo tanto, al interpretar el término empleado según dispuesto en ésta, no podemos limitarnos a la definición que de dicha palabra proveen las leyes laborales que establecen causas de acción en reclamación de salarios y, en consecuencia, excluir de la protección de la Ley Núm. 2, supra, a los ejecutivos, los administradores y a los profesionales.

---

[3] **El Art. 4 de la Ley Núm. 100, supra, 29 L.P.R.A. sec. 149, dispone, en su parte pertinente, lo siguiente: "Las reclamaciones civiles podrán tramitarse por la acción ordinaria o mediante el procedimiento de querella establecido por la Ley Núm. 10 de 14 de noviembre de 1917, según ha sido o fuere posteriormente enmendada." [en la actualidad Ley Núm. 2, supra.]**

Además, en reiteradas ocasiones hemos expresado que las leyes laborales deben interpretarse liberalmente y que toda duda debe resolverse a favor del obrero. Méndez v. Fondo de Seguro, Op. de 19 de marzo de 1996, 140 D.P.R. ___ (1996), 96 J.T.S. 40; Muñoz Hernández v. Policía de P.R., Op. de 8 de noviembre de 1993, 134 D.P.R. ___ (1993), 93 J.T.S. 137. Esta regla de interpretación estatutaria unida al hecho de que la Ley Núm. 2, supra, indica que el término empleado se utiliza en su acepción más amplia, lleva a la conclusión de que la palabra empleado, según utilizada en la referida ley, incluye a los ejecutivos.

De otra parte, algunas de las leyes en las que la señora Piñero basa su causa de acción proveen la alternativa de que la reclamación laboral se ventile mediante el procedimiento sumario, entre éstas, la Ley Núm. 382, supra, y la Ley Núm. 100. De acuerdo con nuestros pronunciamientos en el caso Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485 (1985), la Ley Núm. 100, supra, está disponible para ejecutivos y empleados gerenciales que son objeto de discrimen por parte de su patrono. En dicho caso reconocimos el derecho de un gerente de ventas, que también se desempeñó como vicepresidente de una empresa, a presentar una acción de discrimen por razón de edad al amparo de la Ley Núm. 100, supra. Por consiguiente, acoger la teoría de la A.A.A. tendría la consecuencia de que ningún ejecutivo, profesional o administrador podría presentar reclamaciones al amparo de la Ley Núm. 100, supra, o de la Ley Núm. 382, supra, y solicitar, a su vez, que éstas se tramiten mediante el procedimiento sumario a pesar de que las referidas leyes proveen dicha opción.

Finalmente, resulta pertinente señalar que los tribunales, en el ejercicio de su discreción y a la luz de las circunstancias específicas de cada caso, pueden disponer que una reclamación presentada al amparo de la Ley Núm. 100, supra, o de la Ley Núm. 45, supra, se ventile por la vía ordinaria:

> ... [l]os tribunales, al confrontarse con querellas o
> demandas con causas de acción y partes múltiples, tienen
> amplia discreción sobre el manejo del caso con el propósito
> de lograr la resolución de éste de la forma más justa,
> rápida y económica posible. Pueden separar causas de acción
> o controversias, consolidar trámites, determinar a la luz
> de las circunstancias de cada caso, si se trata de
> controversias sencillas que cualifican para verse por un
> trámite sumario especial o si se trata de casos complicados
> o complejos que deben proceder por la vía ordinaria y hasta
> de ser objeto de un manejo especial. Rivera v. Insular Wire
> Products, supra, pág. 1173.

En conclusión, dado que el alcance de la Ley Núm. 2, supra, ha sido extendido estatutariamente para abarcar diversas reclamaciones de índole obrero patronal, no tan solo reclamaciones de salarios; que la definición de empleado provista en la misma no excluye expresamente de sus disposiciones a los administradores, ejecutivos ni a los profesionales y que dispone, además, que dicho término se utilizará en su acepción más amplia, concluimos que éste incluye a los ejecutivos. Abona a nuestra conclusión el hecho de que la Ley Núm. 2, supra, es una de carácter reparador y, por lo tanto, debe interpretarse liberalmente. Tampoco debemos perder de vista que el foro de instancia mantiene su discreción para dilucidar las reclamaciones presentadas por la vía ordinaria o para separarlas y permitir que algunas se tramiten por la vía ordinaria y otras mediante el procedimiento sumario dispuesto por la Ley Núm. 2, supra. Por lo tanto, la señora Piñero puede solicitar que su reclamación se tramite mediante el procedimiento sumario.

### III

En cuanto al segundo señalamiento, la A.A.A. alegó que el Tribunal de Circuito erró al confirmar la denegatoria del foro de instancia a su solicitud de sentencia sumaria parcial en torno al planteamiento de que la Resolución 966 no es jurídicamente válida y, en consecuencia, no confiere derecho a reposición en un puesto de carrera.

Reiteradamente hemos expresado que las Reglas 36.1 y 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, permiten a los tribunales dictar una sentencia mediante la cual dispongan total o parcialmente de

determinada reclamación sin necesidad de celebrar un juicio en sus méritos. Así pues, procede dictar sentencia sumariamente cuando no exista una controversia real sustancial respecto a ningún hecho material. Al considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente. La parte opositora, a su vez, debe presentar documentos y declaraciones juradas que controviertan los presentados por la parte promovente. HMCA v. Ileana Colón Carlo, Op. de 30 de junio de 1993, 135 D.P.R. __ (1993), 93 J.T.S. 112. Si la parte opositora se cruza de brazos, corre el riesgo de que se dicte sentencia en su contra sin la celebración de una vista en su fondo. Mercado Vega v. U.P.R, 128 D.P.R. 273, 281 (1991). Ahora bien, la sentencia sumaria sólo debe dictarse en casos claros y cualquier duda sobre si un hecho ha sido o no contradicho, debe resolverse en contra de la parte promovente. Rivera Santana v. Superior Packaging, Inc., Op. de 9 de diciembre de 1992, 132 D.P.R. ___ (1992), 92 J.T.S. 165. Por otro lado, se puede dictar sentencia sumaria a favor de la parte no promovente, si de los documentos presentados en apoyo de la moción surge que no existe controversia en cuanto a los hechos esenciales y, como cuestión de derecho, procede que la misma se dicte a favor de dicha parte. Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538, 549 (1991). En diversas ocasiones hemos expresado que no es aconsejable utilizar el mecanismo de sentencia sumaria en aquellos casos en que existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor credibilidad es esencial. Soto v. Hotel Caribe Hilton, Op. de 17 de octubre de 1994, 137 D.P.R. ___ (1994), 94 J.T.S. 128. La razón para ello es que en este tipo de casos es sumamente difícil que el tribunal pueda reunir ante sí toda la verdad de los hechos a través de documentos. Con estos pronunciamientos en mente, discutiremos si el foro de instancia erró al denegar la moción de sentencia sumaria parcial.

La señora Piñero renunció el 31 de marzo de 1991 a un puesto de carrera en el Municipio de San Juan y comenzó a trabajar en la A.A.A. el 1 de abril de 1991. Alegó que en virtud de la Resolución 966 retuvo la condición de empleada de carrera que poseía en el Municipio de San Juan. La A.A.A., por su parte, sostuvo que la Resolución 966 es nula ab initio por contravenir el principio de mérito y, en la alternativa, que la referida Resolución no estaba vigente en el momento en que la señora Piñero comenzó a trabajar en la A.A.A.

No existe controversia respecto al hecho de que la Junta de Gobierno de la A.A.A. aprobó la Resolución 966 el 28 de diciembre de 1979 y que ésta no había sido expresamente revocada en el momento en que la señora Piñero comenzó a trabajar en dicha corporación. Por lo tanto, la controversia relativa a la validez jurídica de la referida Resolución es un asunto estrictamente de derecho y tanto el tribunal de instancia como el Tribunal de Circuito erraron al determinar que no procedía dictar sentencia sumaria parcial. Es cierto que hemos expresado que en los casos en que se presentan reclamaciones basadas en discrimen por razón de edad, Soto v. Hotel Caribe Hilton, supra, pág. 312, o en hostigamiento sexual, Rodríguez Meléndez v. Sup. Amigo, Inc., 126 D.P.R. 177 (1990), no es recomendable dictar sentencia sumaria. Sin embargo, en el caso de autos la moción de sentencia sumaria parcial solicitada se limita a pedir que se resuelva la controversia sobre si la Resolución 966 es jurídicamente válida o no. Esto es una interpretación estatutaria independiente de si el despido de la señora Piñero fue o no discriminatorio y que no participa de la misma naturaleza. Por lo tanto, procede que pasemos a resolver dicha controversia en los méritos.

**A**

La A.A.A. alega que la Resolución 966 es nula ab initio por ser contraria al principio del mérito expuesto en la Ley de Personal de Servicio Público de Puerto Rico (Ley de Personal), 3 L.P.R.A. sec. 1301 y ss. Este principio tiene como finalidad que sólo las personas más

aptas sean las que sirvan al gobierno y que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo en consideración al mérito, sin discrimen por razones de raza, sexo, nacimiento, edad, origen o condición social, ideas políticas o religiosas. Ley de Personal, supra, 3 L.P.R.A. sec. 1333. Los empleados de las agencias de Gobierno que funcionan como empresas privadas están excluidos del sistema de personal del Estado, pero éstas deben aprobar reglamentos en los cuales incorporen el principio del mérito. Ley de Personal, supra, 3 L.P.R.A. sec. 1338.

En virtud de dicho principio, la Junta de Gobierno de la A.A.A. adoptó un reglamento de personal en diciembre de 1976. Posteriormente, lo enmendó para incluir la Resolución 966, la cual dispone, en parte, lo siguiente:

> [L]os empleados que fueron reclutados que habiendo ocupado puestos de Carrera en las Agencias, Municipios, o Corporaciones Públicas y que posteriormente han pasado o pasen en el futuro a ocupar puestos de confianza en la Autoridad sin haber tenido interrupción en servicio público al efectuarse dicho cambio, tendrán derecho a ser reinstalados con status de empleados regulares de carrera en la Autoridad en puestos de igual nivel o similar al puesto que fue reclutado, entendiéndose que no será ubicado en un puesto superior al último que ocupó de confianza en la Autoridad para cuya retribución se consignará siguiendo el procedimiento de retribución vigente a la fecha de reinstalación.

En otras palabras, dicha Resolución garantiza el derecho de reinstalación a aquellos empleados que han desempeñado puestos de carrera en otras instrumentalidades del Estado y que posteriormente ocupen puestos de confianza en la A.A.A.

El contenido de la Resolución 966 es similar a un artículo de la Ley de Personal, el cual dispone, en su parte pertinente, que:

> Todo empleado que tenga *status* regular en el servicio de carrera y pase al servicio de confianza tendrá derecho de reinstalación a un puesto igual o similar al último que ocupó en el servicio de carrera. Ley de Personal, supra, 3 L.P.R.A. sec. 1350.

Al igual que la Resolución 966, la disposición citada garantiza el derecho de reinstalación en un puesto de carrera a aquel empleado que

pasa al servicio de confianza, tras haber ocupado un puesto de carrera en el servicio público. Dicho derecho es compatible con el principio de mérito porque los empleados con nombramientos de carrera entran al servicio público tras cumplir con los requisitos dispuestos en la Ley de Personal, tales como, exámenes, evaluaciones y el periodo probatorio. Ley de Personal, supra, 3 L.P.R.A. sec. 1333.

A pesar de que la Ley de Personal no aplica a los empleados de agencias del Gobierno que funcionen como empresas privadas, nada impide que éstas adopten reglamentos con disposiciones similares a las contenidas en la Ley de Personal y que garanticen los mismos derechos a sus empleados, entre éstos, la reinstalación en un puesto de carrera a aquellos empleados de confianza que, a su vez, habían ocupado puestos de carrera en otras instrumentalidades del Estado.

La A.A.A. cita el caso Pierson Muller II v. Feijoó, 108 D.P.R. 261 (1978), en apoyo de su alegación de que la Resolución 966 es nula ab initio. Sin embargo, dicho caso es distinguible al que hoy tenemos ante nuestra consideración. En el caso Pierson Muller II v. Feijoó, supra, el empleado demandante ocupaba un puesto en el Servicio sin Oposición (de confianza) en la Oficina Central de Administración de Personal. Posteriormente, se preparó un formulario mediante el cual la agencia cambió su status a empleado de carrera, todo esto sin cumplir con los pasos previos requeridos para un nombramiento de esa naturaleza. En este contexto indicamos que la práctica de trasladar a un empleado de confianza a un status de carrera sin cumplir con los requisitos de exámenes, competencia y evaluaciones dispuestos en la Ley de Personal no es compatible con el principio del mérito y resolvimos que dicho empleado quedó sujeto a ser despedido al libre arbitrio de la autoridad nominadora, dado que su cambio de status fue hecho sin facultad de ley.

Por todo lo antes expuesto, concluimos que la Resolución 966 no es nula ab initio.

**B**

En la alternativa, la A.A.A. argumenta que la Resolución 966 fue derogada mediante fíat legislativo cuando se aprobó la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 agosto de 1988, 3 L.P.R.A. secs. 2101 y ss. Como ya expresáramos, la Resolución 966 se aprobó en 1979 y mediante ésta se enmendó el Reglamento de Personal de la A.A.A de 1976. La aprobación de éste se regía por la Ley de Reglamentos, Ley Núm. 112 de 1957, 29 L.P.R.A. secs. 1041-59 la cual fue derogada por la L.P.A.U. Esta derogó, además, todos los reglamentos aprobados por las agencias que no estuviesen presentados en el Departamento de Estado al 30 de noviembre de 1990.[4]

La A.A.A alega que debido a que su reglamento de personal no estaba contenido en las compilaciones del Departamento de Estado al 30 de noviembre de 1990[5], fue derogado por la L.P.A.U.

Para disponer de la presente controversia es preciso analizar las disposiciones de la Ley Núm. 112, supra, y determinar si ésta exigía la presentación del reglamento de personal de la A.A.A. en el Departamento de Estado. La Sec. 4 de la Ley Núm. 112, supra, indicaba que todo reglamento adoptado por las agencias administrativas debía presentarse ante el Secretario de Estado. La Ley Núm. 112, supra, definía reglamento como:

> ... todo decreto de salario mínimo y toda regla o reglamento, enmienda a éstos o revocación de los mismos, aprobados por cualquier agencia, con excepción de cualquier regla, reglamento u orden que:
>
> (1) Se refiera únicamente al orden o administración interna de una agencia; o

---

[4] La Sec. 8.3 de la L.P.A.U. dispone, en lo aquí pertinente, lo siguiente: "Se derogan todos los reglamentos aprobados por las agencias que no se hayan radicado según lo dispuesto en esta ley o en la anterior Ley 112 del 30 de junio de 1957, ni estén contenidos en las compilaciones de reglamentos radicadas por éstas en el Departamento de Estado al 30 de noviembre de 1990".

[5] En apoyo de su argumento, la A.A.A presentó una certificación emitida por la Secretaria Auxiliar de Servicios del Departamento de Estado en la cual se indica que la A.A.A. no presentó el reglamento en el mismo.

(2)   ...
(3)   <u>Sea dirigido a una persona específica o a un grupo de personas y no sea de aplicación, en general, en todo el Estado Libre Asociado de Puerto Rico</u>. (Énfasis nuestro.)

Observamos que el Reglamento de Personal de la A.A.A. no está comprendido en la definición de la Ley Núm. 112, supra, ya que éste no es de aplicación general en todo Puerto Rico, sino que tan solo regula la selección del personal de la referida corporación, en otras palabras, es de naturaleza interna. Por lo tanto, no tenía que ser presentado en el Departamento de Estado.

La L.P.A.U. exige el cumplimiento de determinados requisitos por parte de las agencias administrativas al aprobar reglamentos, entre éstos, la presentación de los mismos en el Departamento de Estado. La L.P.A.U. define <u>regla</u> o <u>reglamento</u> como:

> cualquier norma o conjunto de normas de una agencia que sea de <u>aplicación general</u> que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia. El término incluye la enmienda, revocación o suspensión de una regla existente. Quedan excluidos de esta definición:
>    (1) Reglas relacionadas con la <u>administración interna</u> de la agencia <u>que no afectan directa y sustancialmente los derechos o los procedimientos o prácticas disponibles para el público en general</u>. (Énfasis nuestro.) 3 L.P.R.A. sec. 2102(l).

Observamos que la propia L.P.A.U. establece las excepciones a la definición de regla o reglamento. Las reglas excluidas de dicha definición no tienen que cumplir con los requisitos de presentación en el Departamento de Estado dispuestos en la ley. L.P.A.U., supra, 3 L.P.R.A. secs. 2105 y 2128. El reglamento de personal de la A.A.A. no está comprendido por la definición citada, ya que no afecta directamente los derechos sustantivos ni procesales de terceros, del público en general. Se trata de un reglamento relativo a la administración interna de la A.A.A., al procedimiento que dicha corporación va a cumplir al contratar su personal. En consecuencia, no era necesario que se presentara en el Departamento de Estado antes del

30 de noviembre de 1990 y no fue derogado mediante la aprobación de la L.P.A.U.

De otra parte, es preciso señalar que la L.P.A.U. se aprobó tomando como modelo las disposiciones de la Federal Administrative Procedure Act, 5 U.S.C. 551 (A.P.A.) y del Model State Administrative Procedure Act. La sección 553(d) de la A.P.A. requiere que las reglas y reglamentos administrativos sean publicados no menos de treinta (30) días antes de entrar en vigor. Sin embargo, la A.P.A. excluye de las disposiciones de dicha sección, incluso del requisito de publicación, aquellos asuntos relacionados con el personal de las agencias.[6]

En virtud de todo lo anteriormente expuesto, concluimos que la Resolución 966 es jurídicamente válida y confiere el derecho de reinstalación a aquellas personas que entraron al servicio público conforme al principio del mérito, ocuparon puestos de carrera y posteriormente desempeñaron puestos de confianza en la A.A.A. Por lo tanto, la referida resolución confirió a la señora Piñero el derecho de reposición en un puesto de carrera en la A.A.A.

Por los fundamentos antes expuestos, se dictará sentencia modificando la Resolución emitida por el Tribunal de Circuito de Apelaciones de 23 de octubre de 1996. Se confirmará la parte de la resolución mediante la cual se determinó que la querella de la señora Piñero puede ventilarse al amparo del procedimiento sumario establecido en la Ley Núm. 2, supra. Además, se revocará la determinación de denegar la moción de sentencia sumaria parcial presentada por la A.A.A. y se resuelve que la Resolución 966 es jurídicamente válida y confiere a la señora Piñero el derecho a reposición en un puesto de carrera en

---

[6] La sección 553(a) de la APA, dispone, en parte, lo siguiente:
"(a) This section applies, accordingly to the provisions thereof, except to the extent that there is involved–
    (1) a military or foreign affairs function of the United States; or
    (2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.
    (b) ...
    (c) ...
    (d)The required publication or service of a substantive rule shall be made no less than 30 days before its effective date,..."

la A.A.A. y así modificada, se confirma. Se devolverá el caso al foro de instancia para que continúe con los procedimientos a tenor con lo dispuesto en esta opinión.


                              Miriam Naveira de Rodón
                                   Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Imgard L. Piñero González

    Demandante-Recurrida

       vs.                              CC-96-478

Autoridad de Acueductos y
Alcantarillados

    Demandado-Recurrente


SENTENCIA


San Juan, Puerto Rico, a 23 de octubre de 1998

    Por los fundamentos antes expuestos, se dictará sentencia modificando la Resolución emitida por el Tribunal de Circuito de Apelaciones de 23 de octubre de 1996. Se confirmará la parte de la resolución mediante la cual se determinó que la querella de la señora Piñero puede ventilarse al amparo del procedimiento sumario establecido en la Ley Núm. 2, supra. Además, se revocará la determinación de denegar la moción de sentencia sumaria parcial presentada por la A.A.A. y se resuelve que la Resolución 966 es jurídicamente válida y confiere a la señora Piñero el derecho a reposición en un puesto de carrera en la A.A.A. y así modificada, se confirma. Se devolverá el caso al foro de instancia para que continúe con los procedimientos a tenor con lo dispuesto en esta opinión.

    Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Negrón García y Rebollo López concurren con el resultado sin opinión escrita.


                  Isabel Llompart Zeno
            Secretaria del TribunaL Supremo