*1207 TEXTO COMPLETO DE LA SENTENCIA
La peticionaria, Abigail Bobonis Rosario, nos pide que revisemos una resolución dictada por el Tribunal de Primera Instancia, mediante la que se denegó la anotación de rebeldía a la parte recurrida y se dispuso convertir en ordinario el procedimiento de autos, que fue instado bajo las disposiciones de la Ley de Reclamaciones Laborales, infra. Posteriormente solicitó que dictásemos orden en auxilio de nuestra jurisdicción, para evitar que se celebrara el juicio en su fondo.
Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.
I
La peticionaria presentó el 10 de septiembre de 2009 una querella al amparo de la Ley de Reclamaciones Laborales, Ley Número 2 de 17 de octubre de 1961, 32 L.P.R.A. 3118., en la que alegó haber sido despedida injustificadamente y que su despido fue discriminatorio, por razón de sus creencias religiosas.
Según surge de la querella presentada por la peticionaria, ésta trabajó desde el 15 de enero de 1993 en el Centro de Diagnóstico Integral y fue despedida verbal y fulminantemente el 30 de junio de 2009 por el Dr. José Milton Soltero Ramírez, de quien era secretaria. Adujo además que su desempeño fue satisfactorio durante los 16 años y 5 meses que laboró en la institución, al igual que su conducta. Según alegó el día de su despido, el Dr. Soltero Ramírez -en presencia de varias personas-, le mostró una hoja de receta o referido de un paciente privado suscrito por otro médico y le pidió que lo leyera, a lo cual la peticionaria se negó por ser un documento confidencial. Tras varios intentos por lograr que la peticionaria leyera el referido documento, el Dr. Soltero Ramírez le gritó en tono alto, irrespetuoso y humillante que estaba despedida y que ella “es más inmoral que el Dr. Soltero Zamora”. Tras preguntarle la peticionaria al Dr. Soltero Ramírez si, en efecto, estaba despedida, el Dr. Soltero Ramírez le indicó que sí.
Además del incidente del despido, la peticionaria alegó en la querella que había sido objeto de discrimen. Según adujo, el Dr. Soltero Ramírez se refería a la peticionaria frente a otras personas como la “fundamentalista”, haciendo alusión a sus creencias religiosas como Pentecostal. Sostuvo que el Dr. Soltero Ramírez era intolerante hacia sus creencias religiosas, lo que creó un ambiente hostil de trabajo. En cierta ocasión oyó al Dr. Soltero *1208 Ramírez referirse a la peticionaria como “talibana”, de forma despectiva, discriminatoria y violatoria de sus derechos. Además, expresaba el Dr. Soltero Ramírez que los pentecostales eran “peligrosos y mentirosos porque interpretan la Biblia como les da la gana”.
En virtud de sus alegaciones, la peticionaria solicitó que se le impusiera a la parte aquí recurrida el pago de la mesada dispuesta por la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. see. 185 et seq.). Asimismo, solicitó el pago de $125,000 como indemnización por la conducta discriminatoria a que fue sometida, además de honorarios, costas y gastos.
La parte recurrida, Centro de Diagnóstico Integral, Inc. y el Dr. José Milton Soltero Ramírez, por sí y la Sociedad Legal de Gananciales fueron notificados de la querella presentada el mismo día en que se presentó; es decir, el 10 de septiembre de 2009. La señora Sara Grecco fue emplazada el 14 de septiembre de 2009.
El 16 de septiembre de 2009, comparecieron los recurridos a solicitar una prórroga de 30 días para anunciar representación legal. Por su parte, el 22 de septiembre de 2009, la peticionaria compareció ante el foro primario para solicitar la anotación de rebeldía de la parte recurrida. Sostuvo, en síntesis, que la solicitud de prórroga que había sometido la parte recurrida no cumplió con los requisitos dispuestos por la Ley Número 2, supra. Expresó que la prórroga se había presentado para anunciar representación legal y no para someter la alegación responsiva y que tampoco cumplió con el requisito de juramentarla. Por tanto y, habiendo transcurrido el término dispuesto para presentar la alegación responsiva, procedía anotarle la rebeldía a la parte recurrida y dictar sentencia en rebeldía.
El 28 de septiembre de 2009, la parte recurrida presentó la contestación a la querella, en la que presentó varias defensas afirmativas.
El 30 de septiembre de 2009, nuevamente la parte peticionaria solicitó que se le anotara la rebeldía a la parte recurrida, por haber transcurrido el término para someter la contestación a la querella, sin que ésta así lo hubiese hecho. Ese mismo día, la parte recurrida sometió una oposición a la solicitud de sentencia en rebeldía. Para esa fecha, ya el foro primario había dictado una orden, de 28 de septiembre de 2009 y notificada el 6 de octubre siguiente, en la que se le apercibió a la parte recurrida que la solicitud de prórroga debía ser presentada bajo juramento; para ello, les concedió 5 días adicionales para presentar declaración jurada.
El 6 de octubre de 2009, notificada el 16 de octubre siguiente, el Tribunal de Primera Instancia concedió 10 días a la peticionaria para replicar a la oposición de solicitud de sentencia en rebeldía.
El 21 de octubre de 2009, los recurridos presentaron otro escrito, en el que sostuvieron que la contestación a la querella que habían presentado hacía innecesario la presentación de una declaración jurada. A su vez, el 27 de octubre de 2009, los recurridos replicaron el escrito de la peticionaria y expresaron las razones por las que procedía dictar sentencia en rebeldía.
El 5 de noviembre de 2009, notificada el 12 de noviembre siguiente, el foro primario dictó una orden denegando la solicitud para que se dictara sentencia en rebeldía y convirtiendo el proceso en uno ordinario. Es precisamente, para que revisemos estas dos resoluciones, que la peticionaria compareció ante este tribunal mediante escrito de certiorari. En síntesis, sostiene que erró el Tribunal de Primera Instancia al denegar la solicitud de anotación de rebeldía y al preterir el trámite sumario invocado por la querellante y encausar sus reclamaciones por el trámite ordinario.
II

Procedimiento sumario de reclamaciones laborales

*1209 La naturaleza sumaria de los casos laborales está anclada en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. see. 3118 et seq., mediante la cual se crea un mecanismo procesal con el propósito de lograr una rápida consideración y adjudicación de querellas presentadas por empleados u obreros contra sus patronos, principalmente en casos de reclamaciones salariales y beneficios. Ocasio v. Kelly Servs., 163 D.P.R. 653 (2005); Lucero v. San Juan Star, 159 D.P.R. 494 (2003); Ríos v. Industrial Optic, 155 D.P.R. 1 (2001); Ruiz v. Col. San Agustín, 152 D.P.R. 226 (2000); Berríos v. González, et al., 151 D.P.R. 327 (2000); Rivera v. Insular Wire Products Corp., 140 D.P.R. 912, 920-923 (1996).
En consideración a la política pública de proteger el empleo, desalentando el despido sin justa causa y proveyendo al obrero así despedido los medios económicos para la subsistencia de éste y de su familia, en la etapa de transición entre empleos, estos casos de despido del empleo por su naturaleza y finalidad requieren ser resueltos a la brevedad posible. Mercado Cintrón v. Zeta Com., Inc., 135 D.P.R. 737 (1994); Srio. del Trabajo v. J.C. Penney Co., Inc., 119 D.P.R. 660 (1987); Resto Maldonado v. Galarza Rosario, 117 D.P.R. 458 (1986); Díaz v. Hotel Miramar Corp., 103 D.P.R. 314 (1975).
A fin de lograr dichos propósitos, y tomando en consideración la disparidad económica entre el patrono y el obrero, y el hecho de que la mayor parte de la información sobre la reclamación salarial está en poder del patrono, la Ley establece lo siguiente: (1) términos cortos para la contestación de la querella presentada por el obrero o empleado; (2) criterios para la concesión de una sola prórroga para contestar la querella; (3) un mecanismo para el emplazamiento del patrono querellado; (4) el procedimiento para presentar defensas y objeciones; (5) criterios para la aplicación de la Reglas de Procedimiento Civil; (6) una limitación específica sobre el uso de mecanismos de descubrimiento de prueba; (7) una prohibición específica de demandas o reconvenciones contra el obrero o empleado querellante; (8) la facultad del tribunal para dictar sentencia en rebeldía cuando el patrono querellado no cumpla con los términos provistos para contestar la querella; y (9) los mecanismos para la revisión y ejecución de las sentencias y el embargo preventivo. En un balance de intereses entre el obrero y el patrono, esta legislación laboral le impone una carga procesal más onerosa al patrono; sin embargo, no lo priva de cualesquiera defensas legítimas en protección de sus derechos.
Como el procedimiento sumario al amparo de la Ley Núm. 2 es uno con espíritu reparador, el mismo debe interpretarse liberalmente a favor del empleado. Esta norma ha sido ampliamente reiterada por el Tribunal Supremo de Puerto Rico. Piñero González v. A.A.A., 146 D.P.R. 890, 901-902 (1998).
No obstante el carácter sumario de este tipo de caso laboral, el Tribunal Supremo ha reiterado su criterio de que cuando se formule oportunamente ante los Tribunales de Primera Instancia una solicitud para convertir el procedimiento sumario en uno ordinario, dicho foro en el ejercicio de su discreción judicial debe hacer un análisis cuidadoso de la naturaleza de la reclamación y de los intereses involucrados tanto del obrero como del patrono, a la luz de las circunstancias específicas de las reclamaciones contenidas en la querella, a fin de determinar si encausa el procedimiento por la vía sumaria u ordinaria. También, el Tribunal de Primera Instancia, de estimarlo necesario, podrá celebrar una vista para dilucidar esta controversia. Berríos v. González, et al., supra.
Nuestro Tribunal Supremo en Dávila, Rivera v. Antilles Shipping, Inc., 147 D.P.R. 483, 492 (1999), establece que:
“[L]a Ley Núm. 2, ante, establece un procedimiento sumario para los casos de reclamaciones instadas por obreros y empleados contra sus patronos por servicios prestados; así, la regulación contenida en los preceptos dispositivos de dicha ley responden a la política pública de abreviar el procedimiento de forma que sea lo menos oneroso posible para el obrero. Tanto la breve exposición de motivos como el historial legislativo de dicha ley destacan, con carácter especial, la naturaleza sumaria del proceso y establecen que el propósito de esta medida legislativa es facilitar la rapidez y celeridad de la resolución de las reclamaciones, propósito al que los tribunales deben dar estricto cumplimiento. Así lo ha reconocido nuestra jurisprudencia en reiteradas ocasiones.”
*1210 El Tribunal Supremo ha reconocido consistentemente que las leyes laborales, al ser instrumentos de justicia social, deben ser interpretadas liberalmente para cumplir sus propósitos reparadores de garantizar la mayor protección de los derechos de la clase trabajadora. El efecto de esta norma liberal de interpretación es que toda duda en cuanto a la aplicación de una disposición legal laboral debe resolverse a favor del empleado. Ramos v. Univisión, 2010 JTS 24, res. el 3 de febrero de 2010; Jiménez, Hernández v. General Inst., Inc., 170 D.P.R. 14 (2007); Cintrón v. Ritz Carlton, 162 D.P.R. 32 (2004); Piñero González v. A.A.A, supra.
Ill
Acorde con la esencia sumaria del procedimiento de la citada Ley Núm. 2, en Dávila, Rivera v. Antilles Shipping, Inc., 147 D.P.R. 483 (1999), se estableció una norma importante de autolimitación en lo que concierne a nuestra jurisdicción apelativa en casos que se tramitan al amparo del procedimiento sumario. Se indicó que la revisión de resoluciones interlocutorias es contraria al carácter sumario del procedimiento bajo la Ley Núm. 2 y que por tal razón, la facultad de revisarlas como tribunal apelativo es limitada. En consecuencia, la parte que pretenda impugnar tales resoluciones interlocutorias deberá esperar hasta la sentencia final y presentar contra ella el recurso pertinente a base del alegado error cometido. íd., págs. 494-497; Ruiz v. Col. San Agustín, supra, pág. 232.
Esta norma, sin embargo, no es absoluta. Como excepción, deben revisarse las resoluciones interlocutorias: (1) cuando la resolución haya sido dictada sin jurisdicción por el Tribunal de Primera Instancia, o (2) en aquellos casos extremos en los que los fines de la justicia así lo requieran; esto es, en aquellos casos extremos en que la revisión inmediata, en esta etapa, disponga del caso -o su pronta disposición- en forma definitiva o cuando dicha revisión inmediata tenga el efecto de evitar una grave injusticia. Dávila, Rivera v. Antilles Shipping, Inc., supra, pág. 498. La naturaleza de los planteamientos traídos ante nuestra consideración en el caso de autos satisfacen los referidos criterios, ya que precisamente se cuestiona la jurisdicción del foro primario para preterir el carácter sumario y de rápida solución que impregna el procedimiento de la Ley Núm. 2.
Comenzaremos discutiendo el señalamiento de error de la peticionaria, en el que cuestiona que se haya permitido a la parte recurrida contestar la querella tardíamente, pese a que dicha parte no cumplió con el procedimiento establecido para la concesión de prórrogas para someter la alegación responsiva. En este caso, la parte recurrida nunca presentó la solicitud de prórroga juramentada, pese a habérsele requerido por el foro primario.
Se ha reconocido la obligación de dar estricto cumplimiento al procedimiento sumario establecido por la Ley Número 2, indicando que los tribunales carecen de jurisdicción para conceder prórrogas cuando no se ha cumplido con lo ordenado. Se trata de un claro mandato legislativo que no está sujeto a discreción judicial. Mercado v. Zeta Communications, 135 D.P.R. 737 (1994); Srio. del Trabajo v. J.C. Penney Co., Inc., 119 D.P.R. 660, 665 (1987); Resto v. Galarza, 117 D.P.R. 458, 460 (1986); Díaz v. Hotel Miramar, ante.
En el caso ante nuestra consideración, la parte recurrida presentó el 16 de septiembre de 2009 una “Solicitud de prórroga para anunciar representación legal”. En dicho escrito, se limitó a expresar que fue emplazada el 14 de septiembre de 2009 y solicitó la concesión de 30 días para “anunciar representación legal”. El mismo no aduce ninguna razón que justifique la concesión de una prórroga; sólo se puede colegir que ello responde a la falta de abogado. Tampoco lo hizo bajo juramento.
Posteriormente, la parte recurrida, en su oposición a que se dictara sentencia en rebeldía, adujo que los recurridos habían sido muy diligentes y que no solicitaron prórroga bajo juramento, porque ello no surgía del emplazamiento que se Ies había notificado. Además, expresaron que la tardanza no había afectado la naturaleza sumaria del procedimiento.
El 28 de septiembre de 2009, el foro primario concedió una prórroga de 5 días para presentar la solicitud bajo *1211 juramento. [1] La parte recurrida tampoco cumplió con esa orden, por considerarla académica o inoficiosa.
Como surge de nuestra exposición normativa, el Tribunal Supremo ha expresado consistentemente que, como regla general, los tribunales tienen la obligación de darle estricto cumplimiento al procedimiento sumario de la Ley Número 2 y que no tienen discreción para conceder prórrogas en los casos en los que no se cumpla con las disposiciones de ésta. Ocasio Méndez v. Kelly Services, Inc. et al., supra.
En su escrito oponiéndose a la anotación de rebeldía, la parte recurrida no alegó razones que justificaran la dilación para presentar su contestación a la demanda. Nótese que el único argumento aducido por ésta fue que ello no afectaría el procedimiento sumario. Es claro que tal razonamiento no constituye justificación válida para la contestación tardía ni para que se omitiera la solicitud de prórroga juramentada. Tampoco nos convence el argumento de que los recurridos desconocían que debían presentar la solicitud de prórroga juramentada. Es principio básico de derecho que la ignorancia de la ley o reglamentos vigentes no excusa de su cumplimiento. Art. 2 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 2.
Así pues, conforme a los claros términos de la Ley Número 2 y lo resuelto en Mercado Cintrón v. Zeta Com., Inc., 135 D.P.R. 737 (1994), el Tribunal de Primera Instancia no tenía discreción para obviar los mandatos legislativos, sobre todo cuando el estatuto lo despoja de jurisdicción para prorrogar los términos con miras a presentar la contestación a la querella, fuera de la manera contemplada en la propia ley, con lo cual no se cumplió en el presente caso.
Ahora bien, el foro primario aceptó la contestación a la demanda presentada, a la vez que motu proprio resolvió que continuaría el trámite del caso por la vía ordinaria. Fundamentó su actuación en que “basándose la Querella no sólo en la Ley 80 de 20 de mayo de 1976, sino también en violaciones a la Ley 100 de 30 de junio de 1959, sobre discrimen en este caso por ideas religiosas, el caso no es susceptible de tramitación por la vía sumaria, por lo que convertimos el proceso en uno de naturaleza ordinaria”.
Respecto al tipo de casos en que procede instar la acción al amparo de la Ley Número 2, se ha reiterado que dicho estatuto le ha impartido dinamismo al proceso de adjudicación de reclamaciones laborales al amparo de diversas leyes laborales, tales como: (1) reclamaciones de salarios y beneficios; (2) las reclamaciones interpuestas por despido injustificado bajo la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185(a) et seq.; (3) por despido injustificado bajo la Ley de Madres Obreras; (4) las reclamaciones bajo el Artículo 5A de la “Ley de Compensaciones por Accidentes del Trabajo”, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R. A. secs. 1 et seq.; (5) las reclamaciones incoadas al amparo de la “Ley Antidiscrimen”, Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. see. 146; [2] y (6) las reclamaciones formuladas al amparo de la Ley Núm. 115 de 20 de diciembre de 1991, mejor conocida como “Ley de Represalias”, 29 L.P.R.A. see. 194 et seq. Véase, Rivera v. Insular Wire Products Corp., supra, a las págs. 922 a 927 sobre su alcance respecto a otras leyes laborales protectoras especiales, nota al calce 5, a la pág. 922. Así pues, este procedimiento está disponible para la reclamación de “cualquier derecho o beneficio” por parte de un empleado, 32 L.P.R.A. see. 3118; Berríos v. González et al., 151 D.P.R. 327, 339 (2000); Piñero v. A.A.A., 146 D.P.R. 890, 900-901 (1998). Nada impide, entonces, que el trámite de una reclamación por discrimen se lleve a cabo al amparo de la Ley Número 2.
En Vizcarrondo Morales v. MVM, Inc., 2008 JTS 184, res. el 6 de octubre de 2008, el Tribunal Supremo se enfrentó a una controversia similar a la presentada en el caso de autos. En aquel caso, el patrono presentó tardíamente una contestación a una querella presentada al amparo de la Ley Número 2, en la que se alegaba discrimen por razón de edad, así como una solicitud para que se convirtiera el procedimiento en ordinario. El Tribunal de Primera Instancia aceptó la contestación a la demanda y concedió la petición del patrono de continuar la acción bajo el procedimiento ordinario. De dicha determinación recurrió la querellante ante este Tribunal y un hermano panel denegó expedir el auto de certiorari. El Tribunal Supremo revocó las determinaciones de este Tribunal y del foro primario. Concluyó que “[s]i la propia ley dispone que el tribunal carece de jurisdicción para *1212 aceptar la contestación tardía a la querella, no puede concluirse que sí posee jurisdicción para negarse a anotar la rebeldía y convertir el procedimiento en ordinario”. Expresó además que dicha interpretación le concedería una ventaja adicional a la parte en mejor posición en estos casos; o sea, el patrono querellado. Ello, a pesar de que éste no fue diligente en la tramitación de la reclamación presentada en su contra. Al disponer de la referida controversia, dispuso lo siguiente:
“Ciertamente, tanto el tribunal como las partes pueden plantear en cualquier momento durante el curso de los procedimientos que la naturaleza de la reclamación amerita que el proceso se convierta en uno ordinario. No obstante, ese planteamiento tiene que surgir cuando el tribunal posee autoridad para así actuar. Si en vista de la estructura dispuesta en el procedimiento sumario dispuesto por la Ley Núm. 2, supra, las circunstancias no le proveen facultad al tribunal para aceptar una contestación tardía a la querella, ni para disponer otra cosa que no sea la anotación de la rebeldía, no puede concluirse que, a pesar de ello, el tribunal podría incluso motu proprio convertir la reclamación en una ordinaria y permitirle al patrono contestar la querella.
Aun cuando reconocemos la discreción del tribunal para determinar la forma en que se debe encauzar la querella a fin de hacerle justicia a las partes, esa discreción está limitada por el mandato expreso de la ley, que dispone que, en general, pasado el término para que el patrono conteste la querella sin que ello ocurra, y sin que se haya solicitado prórroga, el tribunal sólo tiene jurisdicción para anotar la rebeldía y dictar sentencia. En estos casos, el tribunal no puede ignorar la letra clara de la Ley Núm. 2, supra, y negarse a anotar la rebeldía. En vista de ello, erraron tanto el tribunal de instancia como el foro apelativo al negarse a anotar la rebeldía a MVM, aun cuando este último había presentado su contestación a la querella fuera de los términos establecidos por ley, sin presentar justa causa para ello.” [Enfasis nuestro],

Vizcarrondo Morales v. MVM, Inc., supra.

A la luz de lo anterior, quedó claro que, si bien la solicitud para que una querella instada bajo la Ley Número 2 sea tramitada bajo el procedimiento ordinario no tiene que presentarse dentro del término dispuesto para contestar la querella, el foro primario no puede conceder dicho remedio si la contestación a la querella no ha sido sometida oportunamente y conforme a los criterios dispuestos en la ley para su presentación.
La Sección 4 de la Ley Número 2, supra, expresamente dispone que el incumplimiento con el término dispuesto para presentar la contestación o, en la alternativa, con los criterios para solicitar la prórroga, conlleva que el juez dicte sentencia en contra del querellado, a instancias del querellante, concediendo el remedio solicitado. El estatuto requiere que la parte querellada someta la moción de prórroga dentro del término provisto para presentar la contestación. Además, exige que el patrono querellado cumpla con varios criterios adicionales para la formulación de dicha solicitud, a saber: (a) que se juramente la moción; (b) que se especifiquen los motivos que justifican su concesión; y (c) que la moción se notifique a la parte querellante. 32 L.P.R.A. see. 3120. En ningún otro caso, por mandato legislativo, tendrá jurisdicción el tribunal para conceder esa prórroga, [3] Vizcarrondo Morales v. MVM, Inc., supra.
En la controversia ante nuestra consideración, la parte recurrida, tras ser notificada de la querella presentada al amparo de la Ley Número 2, sometió una solicitud de término adicional para “anunciar representación legal” dentro del término dispuesto por ley para contestar la querella. No surge de ésta una solicitud fundamentada para prorrogar el término para la contestación a la demanda, ni ésta fue juramentada. Evidentemente, dicho escrito no cumplió con el claro mandato legislativo que requiere juramentar la moción y especificar los motivos que la justifican. En ausencia del cumplimiento de dichos requisitos, el foro primario carecía de jurisdicción para denegar la anotación de rebeldía, por lo que no procedía tampoco convertir el procedimiento en uno sumario.
Concluimos, en virtud de los fundamentos discutidos, que procede revocar las resoluciones recurridas. La *1213 parte recurrida no cumplió con los criterios para formular una moción de prórroga, según lo dispuesto en la Ley Número 2, por lo que procede anotar la rebeldía de la parte recurrida. Tampoco se justifica la conversión al procedimiento ordinario, pues el foro primario carecía de jurisdicción para, motu proprio, así actuar. El caso debe continuar como uno bajo el procedimiento sumario de la Ley Número 2.
Lo anterior no impide que en el descargo de su función adjudicativa, el foro primario celebre las vistas que sean necesarias. Debe recordarse que el Tribunal Supremo ha expresado que “el proceso de formar conciencia judicial exige la comprobación de cualquier aseveración mediante prueba”. Hernández v. Espinosa, 145 D.P.R. 248, 272 (1998), según citado en Ocasio v. Kelly Servs., ante. Como es sabido, al dictarse una sentencia en rebeldía, las alegaciones concluyentes, las conclusiones de derecho y los hechos alegados de forma generalizada no son suficientes para sostener una adjudicación a favor del demandante o querellante. Además, los daños generales, o sea, las sumas no líquidas reclamadas tienen que probarse; en todo caso, la cuantía de los daños debe ser objeto de prueba, Vizcarrondo Morales v. MVM, Inc., supra. Es decir, si para que un tribunal pueda dictar sentencia en rebeldía le es necesario comprobar la veracidad de cualquier alegación, o hacer una investigación sobre cualquier otro asunto, deberá celebrar las vistas que estime necesarias y adecuadas. (Énfasis suplido.) íd; Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 D.P.R. 563 (1997). Al celebrar las referidas vistas, el tribunal deberá aplicar los mecanismos contemplados en las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, para casos en rebeldía.
IV
Por los fundamentos discutidos, se expide el auto de certiorari presentado y se revocan las resoluciones recurridas, por lo que deberá continuarse el procedimiento sumario en rebeldía. El foro primario deberá continuar los procedimientos, conforme a lo aquí dispuesto.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 66

. Cabe mencionar que la notificación de la orden del Tribunal de Primera Instancia concediendo un término a la parte recurrida para someter su juramento a la solicitud de prórroga fue notificada cuando ya había transcurrido el término de 10 días dispuesto en la Ley Número 2 para contestar la querella.

. En el contexto de la sentencia sumaria al adjudicar ciertas controversias, se ha advertido que, en casos laborales, no resulta apropiada la adjudicación sumaria, cuando existe controversia sobre la verdadera motivación de un patrono para el despido de un empleado. Jusino et als. v. Walgreens, 155 D.P.R. 560, 579-580 (2001); Acevedo v. Western Digital Caribe, lnc., 140 D.P.R. 452, 469 (1996); Soto v. Hotel Caribe Hilton, 137 D.P.R. 294, 306 (1994); Rodríguez Meléndez v. Sup. Amigo, lnc., 126 D.P.R. 117, 135 (1990). No obstante ello, recientemente, el Tribunal Supremo expresó en Ramos v. Univisión, supra, que la sentencia sumaria sí puede ser utilizada para disponer de una reclamación laboral.

. A esos efectos, la Sección 3 establece que:
“[...] se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle. Solamente a moción de la parte querellada, la cual deberá notificarse al abogado de la parte querellante o a ésta si compareciere por derecho propio, en que se expongan bajo juramento los motivos que para ello tuviere la parte querellada, podrá el juez, si de la faz de la moción encontrara causa justificada, prorrogar el término para contestar. En ningún otro caso tendrá jurisdicción el tribunal para conceder esa prórrogas (Énfasis nuestro).