ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| LIZBETH ROLDÁN FLECHA, Recurrida, v. LUIS ALBERTO CRUZ CRUZ; JAZMÍN MARTÍNEZ ROSARIO; **COOPERATIVA DE AHORRO Y CRÉDITO ORIENTAL**, Peticionaria. | KLAN202400614 | **APELACIÓN acogida como *CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de Humacao. Civil núm.: HU2021CV00564. Sobre: rescisión de contrato por dolo, y daños y perjuicios. |
|---|---|---|

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 16 de julio de 2024.

El 24 de junio de 2024, la Cooperativa de Ahorro y Crédito Oriental (Cooperativa) presentó este recurso con el fin de que este Tribunal revoque la *Resolución* del Tribunal de Primera Instancia, Sala Superior de Humacao, que denegó su solicitud de sentencia sumaria[1].

Evaluada la petición y sus anejos, así como la oposición a la expedición del recurso presentada por la parte recurrida el 8 de julio de 2024, este Tribunal expide el auto, revoca la resolución recurrida y desestima con perjuicio la demanda instada en contra de la Cooperativa.

I

Conviene comenzar por apuntar que el foro primario ya había dictado una *Sentencia Parcial* el 10 de noviembre de 2023, notificada el 13 de noviembre[2], a favor del actual tenedor del pagaré hipotecario, Oriental Bank de Puerto Rico (Oriental). En ella, el tribunal acogió la solicitud de sentencia sumaria presentada por Oriental y desestimó con perjuicio la demanda instada en su contra.

---

[1] *Véase*, apéndice del recurso, a la pág. 207-215.

[2] *Íd.*, a la pág. 164-178.

Número identificador

SEN2024_____

En síntesis, en su sentencia sumaria parcial, la cual ha advenido final y firme, el tribunal concluyó que Oriental no había participado en forma alguna en la negociación u otorgamiento de la escritura de compraventa suscrita entre la recurrida, señora Lizbeth Roldán Flecha (señora Roldán) y los señores Luis Alberto Cruz Cruz y Jazmín Martínez Rosado (señores Cruz-Martínez), por lo que no procedía la imposición de responsabilidad por unos supuestos vicios ocultos que exhibía la propiedad inmueble objeto de este pleito[3].

A pesar de las determinaciones de hechos no controvertidos y del derecho citado por el tribunal, una vez la Cooperativa presenta su solicitud de sentencia sumaria parcial el 1 de abril de 2024[4], conforme a los mismos hechos determinados previamente, el foro primario denegó su solicitud. En síntesis, el tribunal concluyó que existía una controversia material que le impedía dictar la sentencia solicitada; a decir, si la Cooperativa había rebasado o no sus funciones ordinarias en el proceso de la aprobación del préstamo hipotecario. En apoyo de su determinación, el tribunal se valió del precedente establecido en *Amaro González v. First Fed. Savs.*, 132 DPR 1042 (1993). Además, le imputó a la Cooperativa no haberle puesto en posición de concluir que desconocía de la existencia de los supuestos vicios ocultos.

Por constituir los hechos probados, transcribimos las determinaciones contenidas en la sentencia sumaria parcial dictada el 10 de noviembre de 2023.

### DETERMINACIONES DE HECHOS[5]

1. El 27 de abril de 2021, la compradora, señora Lizbeth Roldán Flecha, y los vendedores, señor Luis A. Cruz Cruz y señora Jazmín Martínez

---

[3] Se trata de una casa unifamiliar, en la cual el empañetado del techo de la sala y la antesala se desprendió, cuando el padre de la señora Roldán se disponía a rasparlo para, luego, pintarlo. Ello surge de la transcripción de la deposición tomada a la señora Roldán, la cual fue adjuntada a la solicitud de reconsideración de la sentencia, *infra.*

[4] *Véase*, apéndice del recurso, a la pág. 179-195.

[5] El énfasis y el subrayado es nuestro.

Rosario, suscribieron y otorgaron la Escritura Pública Núm. 68 de Compraventa ante el notario público Cristian Manuel Rivera Rodríguez.

2. Mediante la Escritura Pública Núm. 68 de Compraventa, el matrimonio Cruz-Martínez vendió a la señora Roldán el inmueble localizado en la Calle 2-J-2 Las Piedras de la Urb. April Gardens, Las Piedras, Puerto Rico, inscrito como la finca núm. 9,285 en la Sección de Humacao del Registro de la Propiedad.

3. Según consta en la Escritura Núm. 68 de Compraventa, la transacción pactada por la señora Roldán y los señores Cruz-Martínez consistía en la compraventa del inmueble **en las condiciones o estado en que se encontraba al momento de consumada la compraventa**.

4. Como parte de las cláusulas y condiciones convenidas en la Escritura Núm. 68 de Compraventa, la señora Roldán y los señores Cruz-Martínez expresamente acordaron y estipularon lo siguiente:

> SEXTO: LA PARTE VENDEDORA por la presente, VENDE, CEDE, TRASPASA Y ENAJENA a favor de LA PARTE COMPRADORA, **la propiedad descrita en el hecho PRIMERO de la presente escritura, "as is", es decir, en el estado en que se encuentra la misma**, con todos sus usos, derechos reales y personales, cargas, servidumbres y gravámenes y cuanto le sea anexo a la misma con la obligación legal de saneamiento en caso de evicción. LA PARTE COMPRADORA entra en la posesión real y pacífica de la propiedad que adquiere, sin más requisito, que el presente otorgamiento, **luego de haberla examinado detenidamente y la acepta en las condiciones en que se encuentra (AS IS CONDITION)**.
>
> Consignando todas las partes que esta escritura contiene todos los pactos de las partes, por lo que toda manifestación oral o escrita con referencia a dicha propiedad, efectuada con anterioridad a este otorgamiento, queda sin valor o efecto alguno y que, por tanto, no tiene obligación la PARTE VENDEDORA de realizar reparación o mejora alguna a la misma como condición a la Compraventa.

5. De igual modo, consta en la Escritura Núm. 68 de Compraventa que el notario público Cristian Manuel Rivera Rodríguez advirtió a las partes lo siguiente:

> Los comparecientes aceptan esta escritura en la forma redactada por ser conforme a lo convenido y yo, el Notario, en cumplimiento a lo dispuesto en la ley, después de indagar la voluntad de los otorgantes y examinar e investigar los hechos y datos de los que depende la eficacia y validez del negocio, les hice las reservas y advertencias legales

generales pertinentes a este otorgamiento. **Entre otras cosas se les explicó y ellos expresamente reconocen [...] la necesidad de mensurar el terreno adquirido y verificar si las estructuras que enclavan en el mismo adolecen o no de vicios [...]**.

6. El 28 de mayo de 2021, la Cooperativa de Ahorro y Crédito Oriental (Cooperativa) cedió y transfirió a Oriental Bank el préstamo y el pagaré hipotecario suscrito por la compradora señora Roldán. En virtud de dicha cesión de derechos, Oriental Bank se convirtió en el tenedor del pagaré hipotecario y en el acreedor de la deuda evidenciada por dicho instrumento.

7. Oriental Bank no fue parte de la transacción de compraventa realizada entre la compradora señora Roldán y los vendedores señores Cruz-Martínez, y tampoco participó de las negociaciones relacionadas con dicha transacción de compraventa.

8. **Como parte de los trámites relacionados con la solicitud de préstamo de la señora Roldán, la Cooperativa contrató al tasador Héctor O. Santiago Ruiz <u>para determinar el valor en el mercado del inmueble en controversia</u>**.

9. En el Informe de Tasación, **el tasador Santiago Ruiz certificó que ningún empleado, director, oficial o agente de la Cooperativa, así como ningún otro tercero actuando como socio en una empresa común, o contratista independiente, compañía de tasadores, o socio de la Cooperativa, había influenciado o intentado influir en el desarrollo, reporte, resultado, o examen de su tasación mediante coerción, extorsión, colusión, compensación, incentivo, intimidación, soborno o de cualquier otra manera**.

10. De igual forma, **el tasador también certificó que la Cooperativa no había incurrido en ninguna de las siguientes conductas prohibidas durante su relación de negocios**: (i) retener o amenazar con retener el oportuno pago, completo o parcial, por algún informe de tasación; (ii) retener o amenazar con retener negocios futuros con el tasador, ni con retener promociones o aumentos en la compensación

del tasador; (iii) expresa o implícitamente prometer negocios futuros con el tasador, ni con retener promociones o aumentos en la compensación del tasador; (iv) condicionar la solicitud del informe de tasación o del pago del salario o tasa de tasación o prima sobre la opinión, conclusión o valoración a alcanzar, o en el estimado preliminar de valor; (v) solicitado que el tasador proveyera un estimado predeterminado o valoración deseada en un informe de tasación con anterioridad a la finalización del informe de tasación, o solicitado que el tasador proveyera estimados de valor o ventas comparables en cualquier momento anterior a la finalización del informe de tasación; (vi) suministrado al tasador, a su compañía de tasación, o a cualquier entidad o persona relacionada con el tasador, compañía de tasación, acciones u otros beneficios financieros o no financieros; (vii) cualquier otro acto o práctica que incidiera o pudiera incidir en la independencia, objetividad o imparcialidad del tasador o que infringiera la ley o reglamentos, incluyendo, pero sin limitarse a, la *Truth in Lending Act* (TILA) y el Reglamento Z, o los USPAP[6].

11. **El tasador Santiago Ruiz inspeccionó el inmueble el 10 de marzo de 2021, y rindió el Informe de Tasación el 15 de marzo de 2021**.

12. **Según se desprende del Informe de Tasación, el valor estimado de la propiedad en el mercado fue de $90,000.00**.

13. En la *Solicitud Uniforme de Préstamo Residencial*, **la señora Roldán acordó y reconoció que el prestamista o sus agentes, corredores de bienes raíces, aseguradores, recaudadores, sucesores o concesionarios, no le habían hecho representaciones ni le habían provisto garantía alguna a la demandante sobre la propiedad, ni sobre las condiciones o el valor de la misma**.

14. **En efecto, y según consta en el documento intitulado *For Your Protection: Get a Home Inspection*, la Cooperativa orientó a la señora Roldán sobre lo siguiente: (i) que si deseaba obtener una**

---

[6] USPAP o *Uniform Standards of Professional Appraisal Practice.*

**inspección de la vivienda, era mejor hacerlo a la brevedad posible; (ii) que la tasación no era una inspección de la vivienda; (iii) que la determinación de procurar o no una inspección de la vivienda era una decisión voluntaria de la demandante; (iv) que la inspección de la vivienda solo se realizaría si la demandante la procuraba y la coordinaba; (v) que el prestamista podía optar por no inspeccionar la vivienda; y, (vi) que ni la FHA ni el prestamista garantizaban las condiciones de la vivienda**.

15. **El 26 de febrero de 2021, la señora Roldán recibió y firmó el documento intitulado *For Your Protection: Get a Home Inspection*.**

16. El **27 de abril de 2021**, la señora Roldán otorgó la Escritura Pública Núm. 69 de Hipoteca ante el notario público Cristian Manuel Rivera Rodríguez.

17. En virtud de dicha escritura, la señora Roldán constituyó una hipoteca sobre el inmueble localizado en la Calle 2-J Las Piedras de la Urb. April Gardens, Las Piedras, Puerto Rico 00771, inscrito como la Finca Núm. 9,285 en la Sección de Humacao del Registro de la Propiedad, para garantizar la deuda evidenciada por el pagaré por la suma principal de $83,535, más intereses.

18. En la Escritura Pública Núm. 69 de Hipoteca, la demandante, como deudora hipotecaria, acordó, convino y aceptó lo siguiente: [e]l Deudor pagará a su vencimiento el principal y los intereses sobre la deuda evidenciada por el Pagaré, y cargos por demora adeudados bajo el Pagaré. El Deudor también pagará las Partidas en Reserva conforme a la Sección 3."

19. Además, la señora Roldán, como deudora hipotecaria, acordó, convino y aceptó lo siguiente:

> Los pagos efectuados bajo el Pagaré y bajo esa Hipoteca se harán en moneda de los Estados Unidos. Sin embargo, si cualquier cheque u otro instrumento recibido por el Prestador en pago bajo el Pagaré o esta Hipoteca es desairado y devuelto al Prestador, el Prestador podrá requerir que cualquier o todo pago posterior adeudado bajo el Pagaré y bajo esta Hipoteca se haga de una o más de las siguientes maneras, a elección del Prestador: (a) efectivo, (b) giro, (c)

cheque certificado, cheque oficial de una institución financiera o cheque de gerente, siempre y cuando tal cheque sea librado por o contra una institución cuyos depósitos estén asegurados por una agencia, instrumentalidad o entidad federal, o (d) Transferencia Electrónica de Fondos."

20. En la Escritura Pública Núm. 69 consta el propósito por el cual la señora Roldán hipotecó la Finca Núm. 9,285.

Como anticipamos, a la luz de estas determinaciones de hechos, el foro primario concluyó que Oriental no había participado en forma alguna en la negociación u otorgamiento de la escritura de compraventa suscrita entre la recurrida señora Roldán y los señores Cruz-Martínez, por lo que no procedía la imposición de responsabilidad por los presuntos vicios ocultos que exhibía la propiedad inmueble adquirida. Así pues, el actual tenedor del pagaré hipotecario fue excluido del pleito.

El 1 de abril de 2024, la Cooperativa, amparada en las mismas determinaciones de hechos ya establecidas por el tribunal, solicitó que se desestimara la demanda en su contra[7]. En síntesis, adujo que no había participado en las negociaciones llevadas a cabo entre la señora Roldán y los señores Cruz-Martínez; tampoco tuvo algo que ver con la construcción del inmueble hipotecado; es decir, su única intervención en el negocio jurídico fue a los efectos de financiar la compraventa.

El 19 de abril de 2024, los señores Cruz-Martínez se opusieron a que el foro primario dictara sentencia sumaria parcial a favor de la Cooperativa[8]. Su contención principal estuvo basada en que, contrario a Oriental, que solo había adquirido el pagaré, la Cooperativa había contratado los servicios del tasador y este estaba obligado por la reglamentación federal a inspeccionar la propiedad objeto de la hipoteca. Ello, pues la hipoteca se había tramitado por conducto de la *Federal Housing Administration* (FHA)[9], por lo que, en ciertas circunstancias, la

---

[7] *Véase*, apéndice del recurso, a la pág. 179-195.

[8] *Íd.*, a la pág. 196-206.

[9] Surge de la página electrónica de la FHA que esta es parte del *U.S. Department of Housing and Urban Development*, y provee un seguro hipotecario a favor de las instituciones financieras cualificadas por la misma FHA.

reglamentación pertinente exigía que la entidad financiera inspeccionara la propiedad, previo a otorgar el financiamiento. En particular, aludió al *Handbook 4000.1* o *FHA Single Family Housing Policy Handbook* (Reglamento 4000.1) y a las obligaciones que este impone al tasador de una propiedad. Interpretó que dicho reglamento exige que el tasador verifique cualquier condición defectuosa que afecte la propiedad a ser hipotecada. Por lo tanto, al no haber cumplido cabalmente con las disposiciones federales, el tasador contratado por la Cooperativa había fallado en descubrir los vicios ocultos que exhibía la propiedad. En su consecuencia, la Cooperativa respondía vicariamente por la omisión del tasador.

El 6 de mayo de 2024, el tribunal emitió su *Resolución* y declaró sin lugar la solicitud de la Cooperativa. El foro primario concluyó que existían ciertos hechos materiales en controversia, que estaban relacionados con la credibilidad que pudieran merecerle los testigos y que impedían la disposición sumaria de la reclamación en contra de la Cooperativa; en específico, concluyó como sigue[10]:

> En el presente caso existen controversias de hechos que hacen imposible utilizar la vía de la sentencia sumaria. Existe controversia sobre si la Cooperativa de Ahorro y Crédito Oriental, como acreedor hipotecario, tiene responsabilidad legal por cualquier vicio oculto que la propiedad pudiera tener. Si los codemandados [*sic*] responden por los vicios ocultos de la propiedad, dado [*sic*] la alegada negligencia de su contratista, y si solicitó la inspección requerida conforme al "Handbook 4000.1, Sec. II, D.3.a.III del "Housing of Urban Development – Office of Single Family Housing".
>
> Existe controversia sobre si se realizó una orientación verbal explicando los posibles riesgos al adquirir la propiedad por parte de la Cooperativa hacia la parte demandante, existe controversia sobre si la responsabilidad de la Cooperativa era mucho más extensa y estaban [*sic*] en la obligación de cumplir los requisitos del reglamento de la Ley Federal[,] así como existe controversia si la Cooperativa conocía o debía conocer sobre los vicios ocultos de la propiedad.

---

[10] *Véase*, apéndice del recurso, a la pág. 214.

Inconforme, el 22 de mayo de 2024, la Cooperativa solicitó la reconsideración de la resolución[11]. En esa misma fecha, notificada al día siguiente, el tribunal declaró sin lugar la reconsideración[12].

Aún inconforme, la Cooperativa instó este recurso el 24 de junio de 2024, y apuntó la comisión del siguiente error:

> Erró el Tribunal de Primera Instancia, al declarar No Ha Lugar la solicitud de sentencia sumaria a favor de la Cooperativa, basándose [en] que no se presentó evidencia que pusiera en posición al Tribunal de determinar que su función como institución bancaria no rebasó sus funciones ordinarias en el proceso de aprobar y proveer el financiamiento para la compra de la propiedad en controversia y sobre que tampoco se presentó evidencia para que el Tribunal determinara que la Cooperativa no tenía conocimiento de los alegados vicios ocultos que sufría la propiedad.

Por su parte, el 8 de julio de 2024, la parte recurrida presentó su escueta oposición a la expedición del recurso. En ella, insistió, sin especificar, que la reglamentación federal exigía una inspección de la propiedad, la cual no fue realizada por la Cooperativa.

Perfeccionado el recurso, resolvemos.

II

A

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. En su consecuencia, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada

---

[11] *Véase*, apéndice del recurso, a la pág. 216-293. A su solicitud de reconsideración, la Cooperativa adjuntó copia de la **deposición tomada a la señora Roldán el 26 de febrero de 2024**.

[12] *Íd.*, a la pág. 294.

a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Ramos Pérez v. Univisión*, 178 DPR, a las págs. 213-214.

Así, el Tribunal Supremo ha señalado que, "la parte que solicita la sentencia sumaria en un pleito está en la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley". *Rivera, et al. v. Superior Pkg., Inc., et al.*, 132 DPR 115, 133 (1992). A su vez, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente." *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

Por último, no procede resolver un caso por la vía sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones alternativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (4) como cuestión de derecho no procede. *Echandi v. Stewart Title Guaranty Co.*, 174 DPR 355, 368 (2008). Además, un tribunal no deberá dictar sentencia sumaria cuando existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de credibilidad es esencial. *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009).

B

Las fuentes de las obligaciones son la ley, los contratos y los cuasicontratos, los actos ilícitos, y los actos u omisiones en que intervenga culpa o negligencia. Art. 1063 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 8984. En cuanto a los contratos en particular, el Art. 1233 del Código Civil dispone que: "Lo acordado en los contratos tiene fuerza de ley entre las partes, sus sucesores y ante terceros en la forma que dispone la ley". 31 LPRA sec. 9754. "**Consecuentemente, un contrato existe desde que una o varias personas prestan su consentimiento a obligarse a**

**dar alguna cosa o prestar algún servicio**". *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 455 (2014). (Énfasis nuestro).

Los contratos quedan perfeccionados desde que las partes contratantes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Art. 1237 del Código Civil, 31 LPRA sec. 9771. Así pues, "las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven de éste, ello conforme a la buena fe, al uso y a la ley". *Álvarez v. Rivera*, 165 DPR 1, 18 (2005). Véase, además, Art. 269 del Código Civil, 31 LPRA sec. 6131.

Por otro lado, el Código Civil dispone que todo transmitente de un bien a título oneroso responde por evicción y por los defectos ocultos del bien, aunque lo ignorase. Art. 1261, 31 LPRA sec. 9851. Este deber de saneamiento opera aun cuando nada se exprese en el acto de la enajenación. Art. 1262, 31 LPRA sec. 9852. Claro está, las partes pueden aumentar, disminuir o suprimir esta obligación; no obstante, la disminución o supresión de esa responsabilidad será inválida si la parte transmitente incurre en dolo. *Íd.*

El Tribunal Supremo de Puerto Rico ha expresado que, en el derecho de contratos, este deber de garantía se conoce como saneamiento por evicción - perturbación jurídica del derecho adquirido -, o saneamiento por vicios ocultos - perturbación económica de la posesión de la cosa. *Domínguez Talavera v. Caguas Expressway Motors*, 148 DPR 387, 395-396 (1999); *Ferrer Delgado v. General Motors. Corp.*, 100 DPR 246 (1971). El saneamiento por vicios ocultos contempla situaciones en las que, posterior a la entrega, se evidencian en la cosa defectos intrínsecos, que exceden las imperfecciones menores que cabe esperar normalmente en un producto determinado. *D.A.C.O v. Marcelino Mercury*, 105 DPR 80 (1976). Véase, además, Art. 1267 y 1268 del Código Civil, 31 LPRA sec. 9871 y 9872.

### III

En primer lugar, debemos aclarar que al caso de autos no le aplica la doctrina esbozada por el Tribunal Supremo de Puerto Rico en *Amaro González v. First Fed. Savs.*, 132 DPR 1042 (1993). Hemos evaluado con detenimiento el expediente del caso y no existe un ápice de prueba que refleje, tal como sí ocurrió en *Amaro González*, que la Cooperativa haya promovido, intervenido o de alguna manera se hubiera involucrado en la compraventa del inmueble en controversia. La intervención de la Cooperativa se limitó a dos cosas: financiar la compraventa, según solicitado por la señora Roldán, y calcular el precio en el mercado de la propiedad; es decir, tasarla.

Cual determinado por el propio foro primario en las determinaciones de hechos no controvertidos de su sentencia parcial del 10 de noviembre de 2023, surge de la Escritura Núm. 68 de Compraventa que la transacción pactada por la señora Roldán y los señores Cruz-Martínez consistía en la compraventa del inmueble **en las condiciones o estado en que se encontraba al momento de consumada la compraventa**. Inclusive, el tribunal también concluyó que, en esa compraventa, **el notario apercibió a las partes contratantes de la necesidad de mensurar el terreno y verificar si la estructura adolecía de vicios**.

De otra parte, y en lo que se refiere al tasador contratado por la Cooperativa para la valoración de la propiedad, señor Héctor O. Santiago Ruiz, el tribunal explícitamente concluyó que **el servicio contratado fue con el fin de determinar el valor en el mercado del inmueble**.

Además, como parte de las gestiones para el financiamiento, la señora Roldán suscribió la *Solicitud Uniforme de Préstamo Residencial,* en la que acordó y reconoció que ni el prestamista o sus agentes, corredores de bienes raíces, aseguradores, recaudadores, sucesores o concesionarios, le habían hecho representaciones ni le habían provisto

garantía alguna sobre la propiedad, ni sobre las condiciones o el valor de la misma.

Más aún, y según consta en el documento intitulado *For Your Protection: Get a Home Inspection*, la Cooperativa orientó a la señora Roldán sobre lo siguiente: (i) que si deseaba obtener una inspección de la vivienda, era mejor hacerlo a la brevedad posible; (ii) **que la tasación no era una inspección de la vivienda**; (iii) que la determinación de procurar o no una inspección de la vivienda era una decisión voluntaria de la demandante; (iv) que la inspección de la vivienda solo se realizaría si la demandante la procuraba y la coordinaba; (v) que el prestamista podía optar por no inspeccionar la vivienda; y, (vi) que ni la FHA ni el prestamista garantizaban las condiciones de la vivienda.

Ese documento fue recibido y firmado por la señora Roldán el 26 de febrero de 2021; es decir, meses antes del otorgamiento de la escritura de compraventa el 27 de abril de 2021.

Inclusive, la señora Roldán declaró bajo juramento en su toma de deposición que ella tuvo la oportunidad de examinar el inmueble, luego de otorgar el contrato de opción y previo a la compraventa. En su toma de deposición, declaró que el señor Cruz Cruz le entregó las llaves de la casa y ella acudió a la propiedad con su madre. Posteriormente, volvió a la propiedad y tomó medidas[13]. En ambas ocasiones, los señores Cruz-Martínez no estuvieron presentes.

Adicionalmente, declaró que las escrituras de compraventa le fueron discutidas[14]. Admitió que, cual surge de la escritura de compraventa, había examinado detenidamente la propiedad y la aceptaba en las condiciones en que se encontraba[15]. Además, que sí había firmado el documento sobre la recomendación de una inspección de la propiedad[16]. Por último, y en lo

---

[13] *Véase*, apéndice del recurso, a la pág. 250-252.

[14] *Íd.*, a la pág. 252.

[15] *Íd.*, a la pág. 254.

[16] *Íd.*, a la pág. 278.

pertinente, aclaró que nunca solicitó a la Cooperativa una inspección de la propiedad[17].

Ahora bien, la señora Roldán insiste en que, a la luz de que el financiamiento estaba siendo asegurado por la FHA, el tasador estaba obligado por la reglamentación federal a inspeccionar la propiedad y asegurar que no existían vicios ocultos. Se equivoca.

Este Tribunal ha verificado con detenimiento el *Single Family Housing Policy Handbook 4000.1*, en particular, la versión del 14 de agosto de 2015, aplicable al caso, y no ha encontrado una sola instancia en que dicho reglamento exija que el tasador funja, también, como inspector. Si bien el tasador tiene que cumplir con múltiples evaluaciones, ninguna incluye inspeccionar la propiedad para detectar vicios ocultos. Inclusive, si examinamos el glosario de términos del referido reglamento, podemos corroborar cuáles son las funciones del tasador; a decir:

> Appraiser refers to an FHA Roster Appraiser who observes, analyzes, and reports the physical and economic characteristics of a Property and provides **an opinion of value** to FHA. **An Appraiser´s observation is limited to readily observable conditions and is not as comprehensive an inspection as one performed by a licensed home inspector**.

(Énfasis nuestro).

Es decir, el examen de la propiedad por un tasador se limita a opinar sobre el valor de la propiedad a ser hipotecada y a informar sobre aquellas condiciones negativas que sean **conspicuas o fácilmente detectables**. Su obligación no trasciende esas funciones. Por el contrario, si la parte interesada así lo desea, puede contratar un inspector licenciado para que corrobore cualquier condición de la estructura que no sea fácilmente detectable; i.e., vicios ocultos.

Los hechos que supuestamente estaban en controversia y que impedían la resolución sumaria del caso a favor de la Cooperativa no existían, ni existen. El foro primario erró al denegar la solicitud de sentencia sumaria parcial solicitada por la Cooperativa.

---

[17] *Véase*, apéndice del recurso, a la pág. 284.

Por tanto, concluimos expresamente que el Tribunal de Primera Instancia se equivocó en su interpretación y aplicación del derecho sustantivo aplicable a este caso, por lo que se justifica nuestra intervención en esta etapa, con el fin de evitar un perjuicio sustancial. *Lluch v. España Service,* 117 DPR 729, 745 (1986). Así pues, expedimos el auto y revocamos.

IV

En virtud de lo antes expuesto, este Tribunal expide el auto de *certiorari*, revoca la *Resolución* dictada el 6 de mayo de 2024, y desestima con perjuicio la demanda instada en contra de la Cooperativa de Ahorro y Crédito Oriental.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones