Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| PMM CONTRATISTAS, INC.<br><br>Parte Recurrida<br><br>v.<br><br>R & R ENTERPRISES, S.E.<br><br>Parte Peticionaria | TA2025CE00678 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2020CV03453<br><br>Sobre: Cobro de Dinero |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Sotos, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 14 de noviembre de 2025.

Comparece la parte peticionaria, R & R Enterprises, S.E. (R & R o peticionaria) y solicita que revoquemos la *Resolución* emitida y notificada el 13 de marzo de 2024[1], por el Tribunal de Primera Instancia, Sala de San Juan (TPI). Mediante el referido dictamen, el TPI declaró no ha lugar las solicitudes de sentencia sumaria presentadas por R & R y por la parte recurrida PMM Contratistas, Inc. (recurrida o PMM).

Examinado el recurso y la resolución interlocutoria cuya revisión se solicita, denegamos el auto de *certiorari*.

## I. Trasfondo procesal y fáctico

El 6 de julio de 2020, PMM presentó una *Demanda en Cobro de Dinero* bajo trámite ordinario en contra de R & R. En esta alegó que el 21 de octubre de 2008, suscribió con R & R dos (2) contratos, denominados Contrato A y Contrato B, para la obra de construcción en el Edificio Comercial Rafelio Hyde Park, Carr #1 Ave. Muñoz

---

[1] El 3 de octubre de 2025, el TPI emitió y notificó *Resolución en Reconsideración.* Véase, Entrada Núm. 104 de SUMAC-TPI y pág. 4 del recurso de *certiorari* en la que el peticionario expresó que la referida resolución se emitió mientras éste se disponía a presentar el presente recurso.

Rivera & Ave. Las Marías, Río Piedras, Puerto Rico. Mediante el Contrato A, R & R se comprometió a pagar a PMM la suma de $1,709,390.00 por la obra, más cualquier costo o deducción adicional según surgiera durante la ejecución de la obra. En virtud del Contrato B, R & R se obligó a pagar a PMM la cantidad de $462,198.00 por la obra, más cualquier costo o deducción adicional que surgiera durante la ejecución de esta.

PMM expuso que, durante el transcurso de la obra, las partes acordaron un total de cincuenta y siete (57) órdenes de cambio que añadieron $191,388.00 a las cantidades pactadas originalmente en los contratos, lo que aumentó la remuneración total a $2,358,715.00. Sobre las órdenes de cambio, PMM arguyó que las partes establecieron un protocolo para su aprobación, el cual fue implementado de forma consistente durante la ejecución de la obra. En ese sentido, PMM alegó que a partir de la orden de cambio 43 a la 57, R & R comenzó a incumplir con los pagos y que las gestiones de cobro resultaron infructuosas. También expuso que, a pesar de los incumplimientos de R & R, continuaron con sus obligaciones contractuales y completaron la obra en el año 2010, y que la peticionaria le adeudaba $344,678.91, más los intereses contractuales, por lo que solicitó se declarara con lugar la demanda, y condenara a R & R a pagar la suma adeudada, el interés contractual acumulado, así como los gastos, costas y honorarios de abogado.

El 31 de agosto de 2020, R & R contestó la demanda[2] y negó la mayoría de las alegaciones. Argumentó que PMM violó la cláusula 15 del contrato sobre reclamaciones y disputas, y que hizo la reclamación diez (10) años más tarde, por lo que aplicaba la defensa de incuria (*laches*). Añadió que el 9 de noviembre de 2011, efectuó

---

[2] Entrada Núm. 8-SUMAC TPI.

un pago "final" a PMM por la cantidad de $41,809.91 para satisfacer el balance adeudado de $117,309.91. Especificó que a ese balance se le dedujo la cantidad de $75,500.00, en concepto de multas bajo la cláusula penal del contrato, por haberse completado la obra más tarde de lo pactado. Argumentó que con dicho pago se configuró la doctrina de pago en finiquito. Como parte de sus defensas afirmativas, R & R alegó que el caso no era de cobro de dinero, sino un caso de incumplimiento de contrato, por lo que le aplicaba un término prescriptivo de cuatro (4) años.

Luego de que PMM presentara una solicitud de sentencia sumaria parcial[3] y R & R su oposición[4], el 14 de septiembre de 2022, R & R presentó una *Moción de Sentencia Sumaria[5]*. En síntesis, alegó que procedía se dictara sentencia sumaria a su favor, por los siguientes argumentos: (1) que la causa de acción estaba prescrita, (2) que al pago final realizado le aplicaba la doctrina de pago en finiquito y (3) que PMM incumplió con el contrato porque las órdenes de cambio 43-57 no estaban firmadas ni aprobadas por el dueño e inspector de la obra. PMM presentó su oposición el 28 de octubre de 2022[6], en la que presentó prueba documental e hizo referencia a los documentos que acompañó junto a su solicitud de sentencia sumaria.

El 13 de marzo de 2024, el TPI emitió una *Resolución[7]*, en la que estableció treinta y nueve (39) *Hechos que no Están en*

---

[3] Entrada Núm. 43 SUMAC-TPI.
[4] Entrada Núm. 47 SUMAC-TPI.
[5] Entrada Núm. 48-SUMAC-TPI. Junto a su escrito, R & R acompañó los siguientes documentos: Anejo 1 al 7- Condiciones Generales; Anejo 8- Carta fechada 4 de marzo de 2019; Anejo 9- Contrato AIA; Anejo 10- Contrato AIA; Anejo 11- Deposición Aybar; Anejo 12- Email de Inspección a Contratista; Anejo 13- Deposición Pedro Muñoz; Anejo 14- Deposición Aybar; Anejo 15- Deposición Pedro Muñoz; Anejo 16- Órdenes de Cambio sin firmar; Anejo 17 al 19- Deposición Aybar; Anejo 20- Pago final deuda; Anejo 21- Estado de cuenta cobrando pago final; Anejo 22- Requerimiento de Admisiones PMM; Anejo 23- Declaración Jurada.
[6] Entrada Núm. 56 SUMAC-TPI. Junto con su escrito, PMM acompañó los siguientes documentos: A-Declaración Jurada Pedro Mu[ñ]oz; B-Depo (sic) Aybar; C-Depo (sic) PMM; D-Carta.
[7] Entrada Núm. 72 SUMAC-TPI.

*Controversia.* No obstante, el TPI determinó que en el caso había varias controversias que impedían la disposición sumaria del caso. En específico, el TPI determinó[8] que existía controversia en cuanto a (1) la fecha pactada para el *substantial completion* de la obra, (2) si procedía la multa unilateral impuesta por R & R, y de proceder, determinar su cuantía. También señaló que no había prueba concluyente sobre la intención de las partes respecto a las órdenes de cambio y las fechas pactadas para la terminación de la obra[9]. Por otra parte, el TPI puntualizó que existían dos (2) contratos entre las partes y que el reclamo de la deuda era contractual, por lo que PMM tenía que probar en su día que la deuda reclamada estaba líquida, vencida y exigible y no sujeta a ninguna causa de nulidad.

En cuanto a los argumentos presentados por R & R en su solicitud de sentencia sumaria, el TPI enfatizó que no procedía desestimar la demanda por prescripción. Lo anterior, porque R & R no planteó la defensa de forma oportuna, clara, expresa y específica al presentar su alegación responsiva, por lo que esta se dio por renunciada. En cuanto al planteamiento de pago en finiquito, el foro *a quo* determinó que el último pago realizado por R & R, no podía considerarse como un pago final a efectos de que le aplicara la doctrina de pago en finiquito, pues no se cumplieron con los requisitos establecidos en virtud de la referida doctrina. Por lo antes expuesto, el TPI denegó las solicitudes de sentencia sumaria presentadas por ambas partes.

---

[8] A pesar de que el TPI expuso los hechos que no están en controversia de forma enumerada, en cuanto a los hechos que sí están en controversia, expuso los mismos en forma de párrafo.

[9] El TPI expresó, demás, lo siguiente: Por una parte, se estipula que el 'punch list' se envió en junio, por lo que la cuantía de $75,500.00 de multa sería improcedente toda vez que el retraso es menor a lo que se alega. Sin embargo, ello contradice la posición de PMM en cuanto al momento en que este finalmente culminó la obra.

Inconforme, ambas partes presentaron mociones de reconsideración, oposiciones y réplicas[10]. En lo aquí pertinente, R & R presentó *Moción de Reconsideración* el 19 de marzo de 2024[11].

El 22 de septiembre de 2025, R & R presentó una *Moción Solicitando Remedio*[12], en la que solicitó al TPI que dispusiera de los escritos de reconsideración presentados desde marzo 2024, para no tener que acudir ante este foro apelativo. El TPI emitió una orden[13] en la que expresó que resolvería las reconsideraciones en o antes del 3 de octubre de 2025.

El 3 de octubre de 2025, el TPI emitió *Resolución en Reconsideración*[14]. El TPI **reconsideró** *"las determinaciones de los hechos que no están en controversia y los hechos que están en controversia"*[15]. En específico, el TPI añadió el siguiente como hecho que <u>no</u> están en controversia:

> 22. El *substantial completion* se certificó el 27 de mayo de 2010.[16]

En cuanto a los hechos que están en controversia, el TPI no incluyó o hizo referencia a los mencionados en la resolución anterior[17].

---

[10] Véase, *Moción de Reconsideración,* presentada por R & R (Entrada Núm. 75); *Moción de Reconsideración,* presentada por PMM (Entrada Núm. 77); *Objeción a Reconsideración de PMM Contratistas, Inc.,* presentada por R & R (Entrada Núm. 81); *Oposición a "Moción de Reconsideración" de la Parte Demandada,* presentada por PMM (Entrada Núm. 82); *Réplica a "Objeción a Reconsideración de PMM Contratistas, Inc.",* presentada por PMM (Entrada Núm. 85) y *Moción Reiterando Réplica a "Objeción a Reconsideración de PMM Contratistas Inc.", de la Parte Demandante,* presentada por PMM (Entrada Núm. 87).

[11] Entrada Núm. 75 SUMAC-TPI.

[12] Entrada Núm. 99 SUMAC-TPI.

[13] Entrada Núm. 103 SUMAC-TPI.

[14] Entrada Núm. 104 SUMAC-TPI.

[15] *Íd.*, pág. 16, Parte V.

[16] Además, enmendó la determinación de hecho que no está en controversia número 35, (ahora número 36 en la resolución en reconsideración), la cual ahora lee como sigue:

> 36. Según establecido en las Certificaciones 16A y 16B, gracias a las [Ó]rdenes de cambio 1 a la 42 los contratos habían aumentado su cuantía original por las siguientes cantidades: $99,983.75 para el Contrato A y $33,381.25, para un total de $133,365.00.

Asimismo, el TPI eliminó las determinaciones de hechos que no están en controversia número 36 y 37 de la Resolución del 13 de marzo de 2024.

[17] En la resolución anterior el TPI determinó que había controversia en cuanto a (1) si proceden o no las órdenes de cambio 43 a la 57; (2) si procedía la multa de $75,500 y (3) la intención de las partes en cuanto a las órdenes de cambio y fecha de terminación de la obra.

No obstante, el TPI resolvió que había controversia en cuanto al monto de la deuda y sobre cuántos días fueron aprobados mediante las órdenes de cambio 1 a la 42[18]. En ese sentido, el TPI determinó que lo anterior era esencial para determinar si procedía o no la multa impuesta por R & R. En virtud de lo anterior, el TPI concluyó que **no** procedía dictar sentencia sumaria, por lo que reiteró su denegatoria a las solicitudes de sentencia sumaria presentadas por ambas partes.

Inconforme, R & R acude ante nos vía *certiorari* y formuló los señalamientos de error:

> **PRIMER ERROR:** La Honorable [Pagán] Ramos, erró al resolver que existe una controversia de hecho en la adjudicación de las órdenes de cambio de la 43 hasta la 57, sometidas indebidamente por el contratista, a sabiendas que están prohibidas contractualmente, por no estar las mismas firmadas por todas las partes, como establece el contrato, y debido a ello la Honorable Juez cometió el error de aceptar dichas [ó]rdenes de cambio como controvertibles, las cuales jurídicamente el contrato lo prohibía, dicha determinación tuvo el efecto de invalidar la claridad del contrato. Determinación de hecho número 37, Ap.9, *infra.*

> El efecto de la decisión del TPI en detrimento de nuestro ordenamiento legal sobre contratos en la presente controversia tiene el efecto de atentar contra la juridicidad de este y por ello el "Certiorari" radicado ante dicho error que, atenta contra todo el ordenamiento legal Contractual validado en nuestro Código Civil.

> **SEGUNDO ERROR:** La Honorable [Pagán] Ramos, erró al resolver que existe controversia en cuanto a la terminación sustancial del proyecto "Substantial Completion", cuya determinación va atada a la[s] [ó]rdenes de cambio, de forma que, si el contratista altera las certificaciones indebidamente, tiene el efecto de aumentarse el tiempo y evitar las multas gracias a su estrategia ilegal.

> **TERCER ERROR:** La Honorable [Pagán] Ramos, erró al resolver que, existe controversia sobre las certificaciones "17A y 17B, y las certificaciones 18A y 18B, las cuales incluían el restante del proyecto por certificar, el retenido y las [ó]rdenes de cambio N[ú]m. 43-57. Las mismas no fueron evaluadas o firmadas por el dueño o por el Arquitecto Aybar". En la eventualidad

---

[18] En específico, el TPI expresó que "no está claro si los días que reflejan las mismas fueron los que finalmente se aprobaron, ya que ninguna parte presentó las órdenes aprobadas por el inspector."

de que el TPI hubiese analizado las Condiciones Generales del contrato, se hubiese percatado que, factura sin firmar por la inspección y el dueño no procedían en derecho, por ir en contra de las disposiciones contractuales. Al aceptar incorrectamente las alegaciones de PMM, su determinación de hecho número 37 existente en su Resolución creó una controversia inexistente.

**CUARTO ERROR:** El TPI erró al descartar los argumentos de la parte demandada relacionada con el pago en Finiquito, argumentadas a base de todas las decisiones jurisprudenciales de nuestro más Alto Foro, sin embargo, la Honorable [Pagán] Ramos, optó por la más inconsecuente argumentada por la parte demandante. En ese contexto integraremos la prescripción, aunque improcedente por no haber sido alegada en la contestación a la demanda según el TPI, aunque incorporada en nuestra demanda en la defensa afirmativa número 14. Ap. 28, *infra. Ahora* vamos a atar a la incuria de diez años que, debió tomar en consideración el TPI, cuando se evalúa la prueba documental, el contrato no analizado, las deposiciones para emitir una sentencia justa, razonable, que mueva al tribunal en la dirección correcta con el propósito de tener una economía procesal y cumplir con las Reglas de Procedimiento Civil de atender los casos con la celeridad que ameritan, y no sentarse sobre los casos cuando se ha cometido un error.

Como cuestión de hecho el TPI, tardó 19 meses en resolver nuestra Moción de Reconsideración, la cual se dictó originalmente el 13 de marzo de 2024, y se resolvió finalmente el 30 de septiembre de 2025.

## II. Exposición del Derecho

### A. Certiorari

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones interlocutorias realizadas por un foro inferior. La expedición del auto descansa en la sana discreción del tribunal.[19]

En los casos civiles, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las que procede que este Tribunal de Apelaciones expida el recurso de *certiorari.*[20] La citada Regla establece que el recurso sólo se expedirá cuando se recurra de una orden o resolución bajo remedios provisionales de la

---

[19] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

[20] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

Regla 56, *injunctions,* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.   Por excepción, y en el ejercicio discrecional del foro apelativo, se podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia.   Según lo dispuesto en la Regla 52.1, *supra,* al denegar la expedición de un recurso de *certiorari,* el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Ahora bien, aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra,* para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, se justifica nuestra intervención.   Estos criterios son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es decir, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender.[21]

Ello impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[22] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado.

En fin, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[23]

**B. Sentencia Sumaria**

El mecanismo de sentencia sumaria, regulado por la Regla 36 de Procedimiento Civil[24] permite al tribunal disponer de un caso sin celebrar vista en su fondo.[25]

La Regla 36.1 de Procedimiento Civil[26], establece que una moción de sentencia sumaria debe estar fundada en declaraciones

---

[21] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

[22] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

[23] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). Véase, además, *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

[24] 32 LPRA Ap. V, R. 36.

[25] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

[26] 32 LPRA Ap. V, R. 36.1.

juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[27]  Por tanto, el Tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas, si las hubiere, surge que no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y solo resta por resolver una controversia de estricto derecho.[28]

En otro extremo, la sentencia sumaria resulta improcedente cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda.[29]

La parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria.[30]  En este sentido, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación.  Dicha parte está obligada a controvertir la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud, ya que, de no hacerlo, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho.[31]

Sin embargo, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de

---

[27] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335; *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).

[28] 32 LPRA Ap. V, R. 36.3(e); *León Torres v. Rivera Lebrón,* supra; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión,* supra, pág. 214; *González Aristud v. Hosp. Pavía,* 168 DPR 127, 137-138 (2006).

[29] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336; *Mejías et al. v. Carrasquillo et al.*, supra, pág. 299; *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714 (1986).

[30] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336; *León Torres v. Rivera Lebrón,* supra, pág. 44; *Ramos Pérez v. Univisión,* supra, pág. 215.

[31] *León Torres v. Rivera Lebrón,* supra, pág. 43.

la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si realmente existe una controversia sustancial sobre hechos esenciales y materiales.[32]

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a la misma.[33]  A tono con este principio, el Tribunal Supremo ha indicado que, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente."[34]

En el caso de un foro apelativo, este debe utilizar los mismos criterios que el tribunal sentenciador al determinar si procede dictar sentencia sumaria, sin embargo: (1) sólo puede considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta.[35]

Así pues, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar.  A tales efectos, en *Meléndez González, et al. v. M. Cuebas*[36], indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[37]  Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil

---

[32] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.
[33] *Mejías et al. v. Carrasquillo et al.*, supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 721.
[34] *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).
[35] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 337-338; *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 129 (2012).
[36] 193 DPR 100 (2015).
[37] *Íd.,* pág. 118.

y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos".[38]  Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí.[39]

En fin, podrá dictarse sentencia sumaria solamente cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso[40] y, además, si en derecho procede el reclamo.[41] "[C]uando existe duda sobre si hay o no prueba suficiente o si hay una controversia de hecho, esta duda debe resolverse en favor de la parte promovida".[42]

Así pues, el mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria.[43]

**III. Aplicación del Derecho a los Hechos**

Al evaluar la petición de *certiorari,* concluimos que, aun cuando el asunto está contemplado en los supuestos sujetos a revisión de la Regla 52.1 de Procedimiento Civil, supra, la solicitud no cumple con ninguno de los criterios de la Regla 40 del Reglamento de este Tribunal, supra, que justifique nuestra intervención con el dictamen recurrido.

---

[38] *Íd.*, pág. 119.

[39] *Íd.*

[40] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).  A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Íd.*, págs. 213-214.

[41] *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

[42] *Medina v. M.S. & D. Química P.R., Inc.,* supra.

[43] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004).  Véase, además, *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019).

El TPI consignó hechos materiales sobre los cuales no existe controversia, así como aquellos que entiende están en controversia. La apreciación y determinación del TPI, en forma alguna denota una actuación arbitraria, caprichosa o errónea de parte de dicho foro. Ante dicho escenario, nos abstenemos de intervenir con el dictamen recurrido.

**IV. Parte Dispositiva**

Por lo antes expresado, se deniega la expedición del auto de *certiorari*.

Notifíquese.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones